PRESENT:  All the Justices

MOONLIGHT ENTERPRISES, LLC

v.  Record No. 160381

FRANCIS E. MROZ, ET AL.

OPINION BY
JUSTICE D. ARTHUR KELSEY
March 30, 2017

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David S. Schell, Judge

Moonlight Enterprises, LLC ("Moonlight") filed a legal malpractice action against two

lawyers, Francis E. Mroz and Stephen P. Zachary.  The circuit court granted the lawyers' pleas in

bar, dismissing both Mroz and Zachary on statute-of-limitations grounds and, alternatively,

dismissing Mroz on the basis of res judicata.  On the statute-of-limitations grounds, we affirm

the dismissal of Mroz but reverse the dismissal of Zachary.  Given our ruling, we offer no

opinion on the circuit court's alternative, res-judicata ground for dismissing Mroz.

I.

A.  THE 2008 CONDO-PURCHASE TRANSACTION

In 2008, Moonlight retained Francis E. Mroz to provide legal counsel and services for the

purchase of three retail condo units.  Moonlight claims that Mroz failed to obtain or review, prior

to closing, a resale disclosure package ("RDP") pursuant to Code § 55-79.97.  Moonlight also

asserts that Mroz negligently misrepresented that the 3 units included 15 parking spaces for retail

tenants — a fact that Moonlight asserts would have been refuted by the RDP.  The RDP

allegedly included other information of which Moonlight was unaware, including fees and

assessments by the condo association for parking, trash, and other services.

B.  THE 2010 SUIT AGAINST THE CONDO ASSOCIATION

Two years after Moonlight purchased the units, Mroz filed suit against the condo

association on Moonlight's behalf, which sought both a declaratory judgment that it was not

responsible for the parking and trash-removal fees and injunctive relief. Another member of Mroz's firm, Stephen P. Zachary, signed Moonlight's responsive pleading to the association's counterclaim. At some point in the pretrial stage of the case, Zachary took over primary responsibility for the litigation. Following a bench trial, the court ruled against Moonlight on all issues. On January 12, 2012, the court conducted a hearing at which it held that the condo association, as the prevailing party, was entitled to an award of $59,021.14 in attorney fees and costs. That same day, after the hearing, the parties submitted a proposed final order to the court.

A week later, on January 19, Zachary emailed Moonlight and confirmed Moonlight's prior statement to him that it had hired new counsel to handle the appeal. Thus, in his email, Zachary stated, "our attorney client relationship in this matter is now at an end." J.A. at 119; *see also id.* at 43. After Zachary discovered that the court had misplaced the proposed final order, however, he prepared another order on January 26 and forwarded it to opposing counsel who then presented it to the court for entry. *See id.* at 51-52; *see also id.* at 125-29. The court entered the final order on February 10, 2012.

On that day, Zachary advised Moonlight by email that he had spoken with the circuit court's law clerk that morning and had learned that the law clerk had both orders, the original January 12 order and the replacement January 26 order. The circuit court had not yet entered either order. Zachary told the law clerk "to destroy the first order so that the order with [his] typewritten objections [would be] entered, rather than the one with [his] handwritten objections." *Id.* at 190. The law clerk "ripped up the first order while [they] were speaking." *Id.* Zachary copied the newly retained appellate lawyer on the email "so that she [could] also check the court's website to determine the date the order [was] entered for the purpose of any appeal

[Moonlight] may pursue." *Id.*[1]

## C.  THE 2013 MALPRACTICE SUIT

In 2013, Moonlight filed a malpractice suit against Mroz and Zachary.  The complaint charged Mroz with legal malpractice in his handling of the 2008 purchase transaction by causing Moonlight to buy the condo units without being informed about the provisions in the RDP.  The complaint charged Zachary with legal malpractice in his handling of the 2010 litigation against the condo association, which caused Moonlight to lose on the merits and to pay the condo association $59,021.14 in attorney fees and costs.  The court ultimately dismissed the malpractice claim against Mroz pertaining to the 2008 purchase transaction on statute-of-limitations grounds.  Moonlight later nonsuited the malpractice claim against Zachary pertaining to the 2010 litigation.

## D.  THE 2015 MALPRACTICE SUIT

On February 10, 2015, three years to the day after entry of the final order in the unsuccessful condo litigation, Moonlight filed a second malpractice suit — the present suit now on appeal — against Mroz and Zachary.  The complaint asserted six counts of legal malpractice associated with the handling of the 2010 condo litigation.

Mroz and Zachary responded with pleas in bar.  Both pleas asserted that the three-year statute of limitations applicable to oral contracts under Code § 8.01-246(4) barred the new

---

[1] On February 14, Zachary "checked the Virginia Courts website" and determined that the circuit court had entered the second draft of the final order on February 10.  J.A. at 191.  He sent an email to Moonlight on February 14 reporting the entry of the order and wishing Moonlight "[g]ood luck in any appeal." *Id.*  Because Moonlight limited its argument on appeal to extending the tolling of the applicable statute of limitations only until February 10, *see* Oral Argument Audio at 3:29 to 3:46; Appellant's Br. at 13, 15-16, it is unnecessary to determine whether to extend the tolling as far as February 14.

malpractice suit.  Mroz's plea also claimed, as an independent ground for dismissal, that res judicata barred the malpractice claims against him.  The circuit court agreed with each of these arguments, granted the pleas in bar, and dismissed the case against both defendants.

## II.

On appeal, Moonlight argues that the circuit court erred in dismissing Zachary and Mroz on statute-of-limitations grounds.  Moonlight also contends that res judicata did not bar its malpractice claims against Mroz.  Because our ruling on the statute-of-limitations issue fully addresses this case, we offer no opinion on the res judicata issue.  *See Alexandria Redev. & Hous. Auth. v. Walker*, 290 Va. 150, 156, 772 S.E.2d 297, 300 (2015) (reaffirming that "we strive to decide cases on the 'best and narrowest grounds available'" (citation omitted)).

## A.

As a general rule, a showing of an attorney's breach of duty and the existence of "even slight damage sustains a cause of action" for legal malpractice.  *Shipman v. Kruck*, 267 Va. 495, 501, 507, 593 S.E.2d 319, 322, 326 (2004).  This approach follows the traditional view that "[w]here an attorney is sued for malpractice, the cause of action arises from the time when such malpractice occurred, and that without any reference to the circumstances whether the client then knew the fact or not."  H.G. Wood, A Treatise on the Limitation of Actions at Law and in Equity § 122, at 273 (1883).[2]

Over the years, however, our case law has developed what is now called the continuous-representation rule.  In effect a tolling principle, this rule states that,

> when malpractice is claimed to have occurred during the
> representation of a client by an attorney with respect to a particular

---

[2] As we have in the past, we look to Wood's influential treatise for the traditional understanding of these principles.  *See, e.g.*, *Beale v. Moore*, 183 Va. 519, 526, 32 S.E.2d 696, 699 (1945); *Wilson v. Miller*, 104 Va. 446, 448, 51 S.E. 837, 838 (1905).

> undertaking or transaction, . . . the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated, notwithstanding the continuation of a general attorney-client relationship, and irrespective of the attorney's work on other undertakings or transactions for the same client.

*Keller v. Denny*, 232 Va. 512, 518, 352 S.E.2d 327, 330 (1987).

The continuous-representation rule applies "only when a continuous or recurring course of professional services relating to a particular undertaking is shown to have taken place over a period of time." *Id.* at 518, 352 S.E.2d at 331. "The proper inquiry is not whether a general attorney-client relationship has ended, but instead, when the attorney's work on the particular undertaking at issue has ceased." *Shipman*, 267 Va. at 505, 593 S.E.2d at 324; *see MacLellan v. Throckmorton*, 235 Va. 341, 345, 367 S.E.2d 720, 722 (1988); Kent Sinclair, Sinclair on Virginia Remedies § 22-7, at 22-33 to 22-35 (5th ed. 2016).[3] The tolling period extends to, and the limitation period thus begins on, the date when the attorney renders his "last professional services" related to the particular undertaking. *Keller*, 232 Va. at 519, 352 S.E.2d at 331.[4]

---

[3] *See also Marley Mouldings, Inc. v. Suyat*, 970 F. Supp. 496, 497-98 (W.D. Va. 1997); Kent Sinclair & Leigh B. Middleditch Jr., Virginia Civil Procedure § 4.11, at 480-81 (6th ed. 2014) (noting that the "'continuous treatment' of a future plaintiff by a professional may toll the commencement of the running of the statute of limitations until the services related to the injurious event are completed" and that "[o]*nly when the services end*, either because the professional relationship is terminated, or because the professional ceases working on the matters related to the prior injury or mistake, does the period for suit begin to run" (emphasis added)); *cf.* Charles E. Friend & Kent Sinclair, Friend's Virginia Pleading and Practice § 35.01[2][d][ii], at 35-16 (2d ed. 2007) (stating that, in the analogous context of medical malpractice, the "termination of treatment referred to" in the "continuing treatment rule" means "the termination of the *treatment for that particular malady*, not the termination of the physician-patient relationship" (emphasis in original)).

[4] The last professional service need not constitute an independent act or omission giving rise to malpractice liability. To be sure, if the attorney's last professional service involved an act or omission subjecting him to malpractice liability, tolling would be unnecessary because the statute of limitations for that particular act or omission would begin to run from the date that cause of action arose. *See* Code § 8.01-230 (addressing right-of-action accrual); *see Shipman*, 267 Va. at 504, 593 S.E.2d at 324 (addressing the "unity of duty, breach, and damage" triggering

5

"The burden is on the plaintiffs, as the parties seeking to toll the statute of limitations, to establish that the continuing-representation doctrine applies." *Kindle v. Morisset, Schlosser, Ayer & Jozwiak*, 217 F.3d 602, 604 (8th Cir. 2000) (citing *Keegan v. First Bank of Sioux Falls*, 519 N.W.2d 607, 615 (S.D. 1994)). This view is consistent with Virginia law in the malpractice context generally, *see Fines v. Kendrick*, 219 Va. 1084, 1088, 254 S.E.2d 108, 111 (1979) (stating the "burden of proof rested" on the plaintiff to establish a basis "to toll the statute of limitations" on his medical malpractice claim), and thus, we find it applicable here, in the legal malpractice context, as well.

B.

In this case, the circuit court found that the "last legal action" of either Mroz or Zachary occurred on "the January 26 date or the January 19 date, both of which place the filing of the complaint on February 10, 2015 outside of the three-year statute of limitations for legal malpractice." J.A. at 197-98. We assume the court focused on January 26 because that was the date Zachary sent the second final order to opposing counsel, coupled with a request that counsel sign the order and forward it to the court for entry.

1.

With respect to Zachary, we disagree that January 26 was the date "when the attorney's work on the particular undertaking at issue ha[d] ceased." *Shipman*, 267 Va. at 505, 593 S.E.2d at 324. Zachary was trial counsel for Moonlight and signed various pleadings in the condo litigation after Mroz filed the complaint. And Zachary, not Mroz, took upon himself the obligation of bringing the case to closure after losing at trial.

---

cause-of-action accrual). Here, Moonlight does not allege that either Zachary or Mroz negligently acted or failed to act on February 10, 2012. Thus, we must engage in the tolling analysis under the continuous-representation rule as it applies to both defendants.

On February 10, 2012, the date of entry of the final order, Zachary consulted with the circuit court's law clerk and "asked him to destroy" the first version of the final order to ensure that the later version would be the one entered. J.A. at 190. Zachary also informed Moonlight's appellate counsel of this conversation and advised her to be on the lookout for the date of entry of the final order for purposes of filing an appeal. Zachary reported all of these facts to Moonlight, his client. It thus cannot be reasonably said that Zachary's "work on the particular undertaking at issue ha[d] ceased," *Shipman*, 267 Va. at 505, 593 S.E.2d at 324, as of January 26, 2012.

At the plea-in-bar hearing, Zachary did not deny the actions that he took on Moonlight's behalf after January 26. Nor does he do so on appeal. Instead, he argues that we should treat them as legally immaterial because, after he submitted the *first* order to the court, "there was nothing left for [him] to do" and thus, he considered the "attorney/client relationship [to be] over." Appellees' Br. at 17 (quoting J.A. at 43-44). Everything he did for Moonlight later, Zachary contends, was a mere "courtesy" to his former client. J.A. at 50.

We cannot endorse this reasoning. The question before us is whether January 26 was the date "when the attorney's work on the particular undertaking at issue ha[d] ceased." *Shipman*, 267 Va. at 505, 593 S.E.2d at 324. The answer to that question cannot possibly be "yes." Zachary actually did work on Moonlight's behalf after January 26. He tracked the entry date of the final order on the court's website, drafted a new order, conferred with opposing counsel, coordinated with the circuit court's law clerk about entry of the preferred draft order, and reported his activity to his client and appellate counsel. Zachary's work on this case ended, at the earliest, on February 10 when he asked the circuit court's law clerk "to destroy the first order" so as to ensure that the second order was entered and notified Moonlight and its new

7

appellate counsel of these developments so that they could determine the date that the court entered the order for purposes of filing an appeal.  J.A. at 190.

In short, as of February 10, Zachary continued to perform legal work on Moonlight's behalf in an effort to bring the litigation to closure.  While he may have acted with commendable politeness, Zachary's work on February 10 was not a mere "courtesy," *id.* at 50, to a former client.  He performed exactly the kind of legal services required to complete the task for which he was hired.  The circuit court, therefore, erred in holding that the three-year limitation period began to run before February 10, 2012.

2.

The situation with Mroz is different.  The uncontroverted testimony at the plea-in-bar hearing established that Mroz provided no "legal services" to Moonlight in the condo litigation after August 2011.  J.A. at 70.  We acknowledge, but find puzzling, the circuit court's statement that the "last legal action" of *both* Mroz and Zachary was "the January 26 date or the January 19 date."  *Id.* at 197.  We do not find it necessary to address this discrepancy, however, because Moonlight does not argue on appeal that Mroz performed any legal services after January 26.  Instead, Moonlight contends that, for purposes of applying the continuous-representation rule, it does not matter that Mroz performed no legal services after January 26.  Moonlight posits that we should treat him *as if he actually had* because he signed the original complaint 20 months earlier and technically remained counsel of record even after Zachary took over sole responsibility for the case.

Under our application of the continuous-representation rule, however, we do not focus on "whether a general attorney-client relationship has ended, but instead, *when the attorney's work on the particular undertaking at issue has ceased*."  *Shipman*, 267 Va. at 505, 593 S.E.2d at 324

8

(emphasis added). By this, we mean actual work on a particular undertaking, not imputed work. *See Keller*, 232 Va. at 516-19 & n.*, 352 S.E.2d at 329-31 & n.* (distinguishing "between an 'undertaking' and an 'agency' in the context of professional malpractice"). The rule applies "only when a continuous or recurring course of professional services relating to a particular undertaking is shown to have taken place over a period of time." *Id.* at 518, 352 S.E.2d at 331. Tolling ends — and thus the limitation period begins — when the attorney renders his "last professional services" related to the particular undertaking. *Id.* at 519, 352 S.E.2d at 331.

This distinction is important.[5] An attorney who has truly ceased working on a case and has turned the matter over to others in his firm may, of course, be sued for malpractice within the limitation period applicable to him. But we have never held that the continuous-representation rule extends indefinitely the tolling period for all members of the litigation team, even those who have ceased working on the litigation, so long as any one of them continues to do so. If that were not true, then a lawyer could file a pleading in a complex case with a multi-year projected

---

[5] On brief and at oral argument, Moonlight argued that Zachary and Mroz conceded in the circuit court that "the statute of limitations ran as to both when it ran as to one." Oral Argument Audio at 4:38 to 4:57; *see id.* at 28:57 to 29:20; Appellant's Br. at 15-16 & n.3. We have two responses.

First, even if such a concession were made, we are not bound by a party's concession of law, *see CVAS 2, LLC v. City of Fredericksburg*, 289 Va. 100, 117 n.5, 766 S.E.2d 912, 919 n.5 (2015), or the parties' agreement on an issue of law, *see Richmond v. Volk*, 291 Va. 60, 64-65, 781 S.E.2d 191, 193 (2016). Simply put, litigants cannot "define Virginia law by their concessions." *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 454 n.6, 739 S.E.2d 636, 640 n.6 (2013).

Second, we question whether such a concession was ever truly made. Indeed, at the plea-in-bar hearing, counsel for Zachary and Mroz argued that Zachary's last service was on January 26, 2012, and that "Mroz did not provide any legal services from the point of trial onwards. So . . . his date should probably be even further back." J.A. at 86. This assertion was confirmed by Zachary's unchallenged testimony that Mroz provided no "legal services" to Moonlight in the condo litigation after August 2011. *Id.* at 70. Moreover, Zachary and Mroz maintained this position on appeal. *See* Oral Argument Audio at 20:13 to 20:53; Appellees' Br. at 18.

life, leave his law firm and cease working on the case, and yet face a malpractice suit for something that he allegedly did or did not do many years earlier.

Several courts follow an approach similar to the one we adopted in *Keller* and reiterated in *Shipman*.[6] A few do not, however.[7] Under the minority view, a court should impute a firm's continuous representation even to attorneys who made an appearance early in the case and whose personal work on the case may have ended months, even years, before the litigation ends. Tolling the statute of limitations for Mroz would require us to adopt a modified version of this approach that applies tolling to all counsel of record, unless relieved by an order of withdrawal, until the last lawyer performs the last task necessary to bring the litigation to closure. We think it best not to press the continuous-representation rule so far.

Carefully crafted statutes address tolling in many different contexts, such as infancy,

---

[6] *See, e.g.*, *Hirsch v. Weisman*, 592 N.Y.S.2d 337, 339 (N.Y. App. Div. 1993) (holding that when plaintiffs' attorney retained separate counsel to act as trial counsel, the continuous-representation rule did not apply to allow the plaintiffs to sue the retained trial counsel more than three years after the conclusion of the trial), *reargument granted in part and denied in part*, No. M-347, 1993 N.Y. App. Div. LEXIS 2548 (N.Y. App. Div. Feb. 25, 1993), *appeal dismissed*, 619 N.E.2d 662 (N.Y. 1993); *see also* 3 Ronald E. Mallen, Legal Malpractice § 23:44, at 537 (2017 ed.) ("The predicate of the [continuous-representation] rule is that the representation was by the defendant lawyer."); *cf. Dunn v. Rockwell*, 689 S.E.2d 255, 273-75 (W. Va. 2009) (declining to apply respondeat superior liability to firm under continuous-representation rule); *Beal Bank*, *SSB v. Arter & Hadden, LLP*, 167 P.3d 666, 669-74 (Cal. 2007) (holding that "under the most natural reading" of California's tolling statute, "an action against an individual attorney is tolled so long as *that attorney* continues representation; conversely, an attorney's continued representation tolls an action only against that attorney" (emphasis in original)), *overruling in part Beane v. Paulsen*, 26 Cal. Rptr. 2d 486, 492 (Cal. Ct. App. 1993); *Schoenrock v. Tappe*, 419 N.W.2d 197, 202 (S.D. 1988) ("Although the attorney cannot terminate the attorney/client relationship unilaterally by simply failing to provide services, 'the relationship does not continue indefinitely simply because there is no formal termination.'" (citation omitted)).

[7] *See, e.g.*, *Waggoner v. Caruso*, 886 N.Y.S.2d 368, 372 (N.Y. App. Div. 2009), *aff'd on other grounds*, 929 N.E.2d 396 (N.Y. 2010); *Pollicino v. Roemer & Featherstonhaugh, P.C.*, 699 N.Y.S.2d 238, 240-42 (N.Y. App. Div. 1999); *see also* 3 Mallen, *supra* note 6, § 23:45, at 553-55 (stating the continuous-representation rule "has been applied to persons who are vicariously liable only," but presenting only New York as a jurisdiction allowing such imputation).

incapacity, death, incarceration, nonsuits, obstruction, devises for payment of debts, and new written promises to pay on a contract. *See* Code § 8.01-229; Sinclair & Middleditch, *supra* note 3, §§ 4.12-.13, at 486-500 (6th ed. 2014 & Supp. 2016-2017) (surveying tolling events addressed by Code § 8.01-229). Overarching these tolling provisions is Code § 8.01-230, which states that a right of action accrues, and thus, the statute of limitations begins to run, "from the date the injury is sustained" in cases involving personal injury or property damage or "when the breach of contract occurs," but "not when the resulting damage is discovered." When enacted, Code § 8.01-230 superseded earlier case law to the contrary. *See Keller*, 232 Va. at 515, 352 S.E.2d at 329. On a host of similar subjects, therefore, the General Assembly has fully occupied the field with highly specific legislation.

The continuous-representation rule applied in *Keller* represents a judicial addition to, not an interpretation of, statutory principles of accrual and tolling. *Cf.* 3 Mallen, *supra* note 6, § 23:45, at 537-46 (noting that while the continuous-representation rule has gained "general judicial or legislative acceptance," the states that have declined to adopt the rule have done so "usually because of the absence of legislative action or the failure to include the doctrine in a specific malpractice statute"). Given the longevity of its doctrinal principles coupled with apparent legislative acquiescence, *Keller*'s application of the continuous-representation rule nevertheless rests on solid ground. *See Shipman*, 267 Va. at 505 n.6, 593 S.E.2d at 324 n.6.

That said, we do not believe it prudent to extend the continuous-representation rule beyond its judicially-recognized parameters. The decision to adopt the imputed-work extension to the tolling period would require a delicate balancing of competing public policies such as: (i) the repose due a lawyer accused of malpractice; (ii) a client's expectation that all members of a litigation team could be sued together at the same time; (iii) the effect of the rule on lawyers

11

leaving firms and disengaging from active litigation; (iv) the role, if any, of corresponding ethical duties, *see* Va. Sup. Ct. R., Part 6, § II, ¶ 1.16(c); and (v) the risk of a limitation period expiring with respect to a departing member of the litigation team prior to the end of the litigation. Though we have the power to reconcile these competing interests, prudential principles counsel that we abstain from doing so given that the question whether to toll a statute of limitations and under what circumstances has traditionally been the subject of specific legislation. Whether advisable or not, therefore, any expansion of *Keller*'s continuous-representation rule should be resolved by the legislative, not judicial, process.

For these reasons, even if the circuit court were wrong in believing that Mroz's actual work extended to January 26, 2012 (rather than months earlier), the court was clearly right that his work did not extend beyond that date. Zachary performed all of the legal services to Moonlight that occurred between January 26 and February 10, 2012. Mroz played no role in any of those tasks. The court, therefore, correctly held the three-year limitation period barred Moonlight's malpractice claims against Mroz because his "work on the particular undertaking at issue ha[d] ceased," *Shipman*, 267 Va. at 505, 593 S.E.2d at 324, more than three years before Moonlight filed this malpractice action in 2015.

### III.

In sum, the circuit court incorrectly found that the continuous-representation rule did not toll Moonlight's malpractice claims against Zachary, but correctly found that the rule did not toll Moonlight's claims against Mroz. We thus reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

> *Affirmed in part,*
> *reversed in part,*
> *and remanded.*

12