COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Raphael and Senior Judge Clements
Argued at Loudoun, Virginia

**PUBLISHED**

SMITH DEVELOPMENT, INC.

v.        Record No. 1245-22-4

MARTIN C. CONWAY, ET AL.

OPINION BY
JUDGE STUART A. RAPHAEL
JANUARY 9, 2024

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

John S. Lopatto, III, for appellant.

Danny M. Howell (Jennifer Lynn Rowlett; Law Offices of Danny M.
Howell, PLLC, on brief), for appellees.


The legal-malpractice claim here is time-barred if the lawyer worked under an *unwritten* contract, triggering a three-year limitations period, but not if the lawyer worked under a *written* contract, triggering a five-year period.  The parties' written engagement letter carefully specified the lawyer's task—file a chapter 11 bankruptcy petition and obtain confirmation of a plan of reorganization.  That undertaking ended, however, when the bankruptcy court converted the case from a chapter 11 reorganization to a chapter 7 liquidation, ousting the client as debtor-in-possession and ending the prospects of reorganization.  The parties dispute whether the bankruptcy lawyer continued to provide legal services afterward to the client, when the alleged malpractice occurred.  But even assuming that happened, such work constituted a different undertaking through an unwritten or implied contract.  So the trial court correctly applied the three-year limitations period.  It also correctly held that the lawyer was not estopped to assert the statute of limitations as a defense.  We thus affirm the judgment dismissing the malpractice claim as time-barred.

BACKGROUND

In December 2008, Smith Development, Inc. ("SDI") hired Martin Conway and his law firm, Pesner Kawamoto Conway, P.C. (collectively "Conway") to "[f]ile a chapter 11 bankruptcy petition and obtain confirmation of the plan of reorganization."[1] That specific undertaking was spelled out in a written engagement letter signed by Martin Conway and by M. Kevin Smith ("Smith"), the President of SDI. The agreement recited that it did "not include representation or advice on . . . any other matter not specifically described." It said that the law firm was not responsible for other legal matters unless "specifically requested and confirmed by us in writing." And it added that the document "constitutes the entire [a]greement between the parties."

Conway filed the chapter 11 proceeding in January 2009 and obtained approval from the bankruptcy court to be employed as counsel to debtor-in-possession SDI. Conway subsequently filed adversary actions seeking money damages against three parties that had defaulted on real-estate-purchase agreements with SDI.

But on March 17, 2010, after SDI failed to pay the required fees to maintain a chapter 11 proceeding, the bankruptcy court converted the case to a chapter 7 liquidation. The bankruptcy court, on its "own motion," entered orders substituting the bankruptcy trustee, Richard A. Bartl, as plaintiff in place of SDI in each of the three adversary actions.

In July 2010, the trustee engaged Conway as special counsel under 11 U.S.C. § 327(e) to litigate the three adversary actions that Conway had initiated in the chapter 11 proceeding. The trustee moved the bankruptcy court for approval of Conway's employment, stating that Conway had "represented the debtor in the chapter 11 stage of this case and still represents the debtor and

---

[1] A chapter 11 proceeding typically "consists of the existing management operating the business affairs of the estate in bankruptcy to the end objective of reorganization of the business." Richard I. Aaron, *Bankruptcy Law Fundamentals* § 4.5 (2023).

is experienced in" the matters at issue in the adversary proceeding. The trustee also stated that Conway "believes and therefore represents that consistent with 11 U.S.C. § 327, he 'does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.'"

The parties dispute whether Conway, on top of representing the trustee, also continued to provide counsel to SDI after the bankruptcy case was converted to a chapter 7 liquidation. Martin Conway stated in his affidavit that "[a]t no time [after the conversion] did we agree or enter into an agreement expanding the scope of those services beyond the Chapter 11 proceedings."[2] He insisted that his "role as counsel for Smith Development as debtor in possession in the Chapter 11 proceedings terminated upon conversion of the estate to Chapter 7," except for certain clean-up matters "to assist with the Trustee's taking control over what had been the property of the former Chapter 11 estate," namely, "the three adversary proceedings."

SDI, by contrast, insists that Conway continued to give it legal advice after the conversion. Smith said in his declaration that Conway did not recommend that SDI obtain new counsel following the conversion. Smith "continuously considered" the Conway lawyers to be SDI's lawyers. SDI also points to Conway's November 2010 letter in which one of the Conway lawyers urged Smith to "cooperate" with the chapter 7 trustee by attending an upcoming deposition. The letter warned that Smith's failure to participate "could greatly affect the success of these adversary claims being sought on your behalf" and, "more importantly, . . . could lead to your debts not being discharged." To SDI, that letter showed that Conway continued to represent it during the chapter 7 proceeding. SDI also claims that the letter proves that

---

[2] No party objected to the trial court's considering the parties' respective affidavits in connection with Conway's motion for summary judgment and plea in bar.

Conway's legal advice was "incompetent," since a corporation cannot obtain a "discharge" of its debts in a chapter 7 proceeding.[3]

The trustee subsequently settled the three adversary actions for $60,000. SDI contends that the claims were worth far more, about $2 million, according to discovery responses served by Conway in the adversary actions. SDI complains that Conway and the trustee breached their fiduciary duties by settling the claims for a fraction of their value, simply to cover their own professional fees, while the "remaining creditors of Smith Development got nothing."

In January 2011, Smith filed a *pro se* objection to the trustee's motion to approve the settlements. But the defendants in those actions successfully argued that the debtor lacked standing to object because the trustee, not the debtor, controlled the estate in the chapter 7 proceeding. *See Shipman v. Kruck*, 267 Va. 495, 503 (2004) (noting that the chapter 7 debtors "lost control of their assets to the Bankruptcy Trustee . . . . The filing of the bankruptcy, in and of itself, vested those rights in the Bankruptcy Trustee as a matter of law.").

The bankruptcy court approved the proposed settlements on March 17, 2011. Two of the adversary proceedings were then dismissed with prejudice as settled on April 15, 2011, and the third on May 13, 2011. After the trustee reduced the assets of the estate to cash, distributed the proceeds, and filed his accounting, the bankruptcy court entered a final order on September 10, 2012, releasing the trustee and administratively closing the case.

Four-and-a-half years later, on April 28, 2017, SDI sued Conway in the Circuit Court for the City of Alexandria, seeking damages for legal malpractice. The company nonsuited and refiled the action within six months. *See* Code § 8.01-229(E)(3). SDI alleged in the first

---

[3] *See* 11 U.S.C. § 727(a)(1) (denying a discharge if "the debtor is not an individual"); 6 Collier on Bankruptcy ¶ 727.01[3], at 727-9 to 727-10 (16th ed. 2023) ("[C]orporations cannot receive a discharge in a liquidation case. The policy behind this provision is the prevention of trafficking in corporate shells . . . . A corporation may obtain relief from its debts through dissolution. But it does not need relief if it no longer has any assets.").

- 4 -

amended complaint that Conway committed legal malpractice by settling the adversary actions for too little and breaching its duty of loyalty to SDI, which Conway allegedly continued to represent even after the bankruptcy case was converted to chapter 7.

Conway filed a plea in bar based on the statute of limitations. Conway argued that it stopped providing representation for the "Chapter 11 case on March 17, 2010—the date the company was converted to a chapter 7" and that the five-year statute of limitations for a written contract "ran on March 18, 2015, five years after the conversion." Conway denied providing any legal services to SDI after the chapter 7 conversion. And even assuming that Conway had, it would not matter. Citing *Shipman*, 267 Va. at 505, and *Moonlight Enterprises, LLC v. Mroz*, 293 Va. 224, 233-34 (2017), Conway argued that those services would have been a different undertaking from the "particular undertaking" governed by the 2008 engagement letter. That separate undertaking would have been subject to the three-year limitations period for an oral or implied contract. *See* Code § 8.01-246(4). And SDI sued Conway long after that period had elapsed.

Conway moved for summary judgment on that statute-of-limitations defense. SDI responded (among other things) that Conway's work for SDI after the chapter 7 conversion was "a continuing extension and modification covered by the written engagement letter" and that Conway should be estopped to claim otherwise.[4]

---

[4] Conway moved to reopen SDI's bankruptcy case, seeking damages and injunctive relief against SDI for improperly suing Conway for its role as counsel for the trustee. *See Conway v. Smith Dev., Inc.*, 637 B.R. 811, 814 (E.D. Va. 2021), *appeal dismissed*, 64 F.4th 540 (4th Cir. 2023). On review of a recommendation from the bankruptcy court, however, the federal district court said that "if [Conway's] alleged breach of contract occurred after the conversion to a Chapter 7 bankruptcy, then the cause of action would belong to the debtor (Defendant Smith Development Inc.)." *Id.* at 818. The district court directed the bankruptcy court to abstain on Conway's action in favor of letting SDI's malpractice case proceed in State court. *Id.* at 819-20. The Fourth Circuit dismissed Conway's appeal, concluding that it lacked jurisdiction to review the district court's permissive abstention. *Conway*, 64 F.4th at 545.

Following oral argument, the trial court granted Conway's motion for summary judgment on the statute-of-limitations defense. The court found that the parties' written contract in 2008 "specifically and explicitly set forth the matter in which [Conway was] retained to represent" SDI. By contrast, Conway's "actions in continuing to represent [SDI], to the extent that they were, after the Chapter 11 was converted to a Chapter 7 in 2010, [were] governed under an implied contract." The court found no "authority to support [SDI's] argument that the written contract was extended or modified . . . by the, quote, unquote, 'significant conduct' engaged in by [Conway] after the conversion." So the court dismissed the claim with prejudice as time-barred.

SDI noted a timely appeal.

### ANALYSIS

"Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, ___ Va. ___, ___ (Apr. 6, 2023) (quoting Rule 3:20). We review a trial court's decision granting summary judgment de novo. *Id*. at ___. In doing so, we apply "the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Stahl v. Stitt*, 301 Va. 1, 8 (2022) (quoting *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009)).

*A. The statute of limitations in legal-malpractice cases*

"[A]n action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract." *Oleyar v. Kerr*, 217 Va. 88, 90 (1976). As a result, the "statute of limitations for legal malpractice actions is the same as those for breach of contract." *Shipman*, 267 Va. at 501; *Oleyar*, 217 Va. at 90 (same). When a

- 6 -

contract is "in writing and signed by the party to be charged," the breach-of-contract claim must be brought "within five years" after the cause of action accrues. Code § 8.01-246(2). When the claim is based on an "unwritten contract, express or implied," the claim must be brought within three years of accrual. Code § 8.01-246(4).[5] A right of action for a breach-of-contract claim generally accrues "when the breach of contract occurs . . . and not when the resulting damage is discovered." Code § 8.01-230.

But in *Keller v. Denny*, 232 Va. 512 (1987), our Supreme Court fashioned a "judicial addition" to the accrual rules for legal-malpractice actions. *See Moonlight Enters.*, 293 Va. at 236. *Keller* held that a legal-malpractice action accrues when the attorney last provided legal services on the "particular undertaking or transaction" at issue, even if the attorney continues to represent the client on "other undertakings or transactions." 232 Va. at 518. "The proper inquiry is not whether a general attorney-client relationship has ended, but instead, when the attorney's work on the *particular undertaking* at issue has ceased." *Shipman*, 267 Va. at 505 (emphasis added). That "continuous-representation rule" is, in effect, "a tolling principle." *Moonlight Enters.*, 293 Va. at 230. "The tolling period extends to, and the limitation period thus begins on, the date when the attorney renders his 'last professional services' related to the particular undertaking." *Id*. at 231 (quoting *Keller*, 232 Va. at 519).

Since this tolling principle was fashioned by the judiciary, not the legislature, courts should be "prudent" not to "extend the continuous-representation rule beyond its judicially-recognized parameters." *Id*. at 236. As our appellate courts have repeatedly said, "[i]t is well-established that 'statutes of limitations are strictly enforced and must be applied unless the General Assembly has clearly created an exception to their application.'" *Casey v. Merck & Co.*,

---

[5] The three-year limitations period also applies to actions on any contract that is "in writing and *not* signed by the party to be charged." Code § 8.01-246(4) (emphasis added).

283 Va. 411, 416 (2012) (quoting *Rivera v. Witt*, 257 Va. 280, 283 (1999)); *Finnerty v. Thornton Hall, Inc.*, 42 Va. App. 628, 640 (2004) (same). "[A]ny doubt must be resolved in favor of the enforcement of the statute." *Casey*, 283 Va. at 416 (quoting *Arrington v. Peoples Sec. Life Ins. Co.*, 250 Va. 52, 55 (1995)); *Finnerty*, 42 Va. App. at 640 (same).

### B. The particular undertaking at issue

The material facts are undisputed that the particular undertaking governed by the 2008 engagement letter involved a chapter 11 proceeding, not a chapter 7 proceeding. The letter signed by Martin Conway and Smith specifically provided that the agreement was "in regard to the matter described below," namely, "[f]ile a chapter 11 bankruptcy petition and obtain confirmation of the plan of reorganization." That letter made clear that the engagement did "not include representation on . . . *any other matter not specifically described in this Agreement*." (Emphasis added.) The letter also stated, on the second page, that "[a] separate agreement will be required for other services beyond those described in this Agreement."

The particular undertaking governed by that letter concluded when the bankruptcy court converted the chapter 11 proceeding to a chapter 7 liquidation. When that happened, SDI ceased operating as the debtor-in-possession of the bankruptcy estate, replaced by the bankruptcy trustee under 11 U.S.C. § 701. *See* Richard I. Aaron, *Bankruptcy Law Fundamentals* § 1:4 (2023) ("The parties involved in a Chapter 11 case are quite different from those involved in a liquidating Chapter 7.").

By terminating SDI's status as debtor-in-possession, the conversion also "terminated [Conway's] service . . . as an attorney for the debtor-in-possession." *Lamie v. United States Tr.*, 540 U.S. 526, 532 (2004). The trustee became "the representative of the estate," clothed with the "capacity to sue and be sued." 11 U.S.C. § 323; *see also id.* § 704 (duties of trustee). As a result, the bankruptcy court, on its "own motion," substituted the bankruptcy trustee for SDI as

- 8 -

"the proper plaintiff" in the three adversary actions.  The conversion to a chapter 7 proceeding also precluded Conway from fulfilling the stated purpose of the 2008 engagement letter—"obtain confirmation of a plan of reorganization" under "chapter 11," *see id.* §§ 1121-1129 (governing plan of reorganization), something that could not be accomplished under a chapter 7 liquidation, *see id*. §§ 725, 726; W. Michael Garner, *Franchise & Distribution Law Practice* § 13:3 (2023) ("There is a fundamental distinction in bankruptcy between liquidation . . . and reorganization.").

In marshaling the assets of the estate under chapter 7, the trustee was empowered to employ attorneys, 11 U.S.C. § 327(a), including an attorney like Conway who previously represented the debtor:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

*Id*. § 327(e).  Serving in that capacity made Conway counsel to the trustee, not the debtor.[6]  In fact, Conway could not be paid for any post-conversion legal work in the chapter 7 proceeding *unless* employed as special counsel by the bankruptcy trustee.  *See Lamie*, 540 U.S. at 538-39 (interpreting 11 U.S.C. § 330(a) to prohibit the debtor's attorney from receiving compensation for post-petition services in a chapter 7 proceeding unless employed by the trustee under § 327(e)).

To be sure, the parties dispute whether Conway *also* worked as debtor's counsel to SDI after the conversion to chapter 7.  *Cf. id.* at 532 (noting that the debtor's bankruptcy attorney "continued to provide legal services to . . . the debtor, even though he did not have the trustee's authorization to do so").  Conway denies providing such services.  But Smith counters that after

---

[6] Conway signed pleadings as "Counsel for chapter 7 Trustee, Richard A. Bartl, for Smith Development, Inc."

he signed the 2008 engagement letter, he "considered [the Conway] attorneys the counsel for my corporation in the subsequent Chapter 11 *and* Chapter 7 proceedings." (Emphasis added.) And because those lawyers did not recommend that he get new counsel to represent the company after the conversion, Smith says that he "continuously considered them to be the lawyers advising and working for the corporation."[7]

But we need not resolve that dispute to answer the statute-of-limitations question presented here. The "key phrase" in Rule 3:20—"'entitled to judgment'—requires the moving party to demonstrate that no '*material*' facts are 'genuinely in dispute.' It follows that *immaterial* facts genuinely in dispute . . . do not preclude the entry of summary judgment." *AlBritton v. Commonwealth*, 299 Va. 392, 403 (2021) (quoting Rule 3:20) (emphasis added).

The parties' disagreement about whether Conway continued to work for SDI after the chapter 7 conversion is "immaterial." *Id.* For the dispositive question is not whether Conway continued to represent SDI after the chapter 7 conversion, but—assuming Conway did so—whether such work was done under the 2008 *written* engagement letter (triggering a five-year limitations period) or under an "unwritten contract, express or implied" (triggering a three-year period). Code § 8.01-246(2), (4).

The particular-undertaking doctrine *presumes* that a lawyer charged with malpractice as to one undertaking may continue to represent the client on other undertakings. *Moonlight Enters.*, 293 Va. at 230-31. Even so, the tolling stops when work on the "particular undertaking"

---

[7] The Virginia Rules of Professional Conduct do not require that an attorney advise a client in writing when a particular representation has ended but offer sensible advice about the benefits of doing so. *See* Va. R. Prof. Conduct 1.3 cmt. 4 ("If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so.").

has ended. *Id*. So when analyzing the statute-of-limitations issue, the question is not whether Conway provided counsel to SDI after the conversion to chapter 7, but whether he did so under the 2008 engagement letter. "The burden is on [SDI], as the part[y] seeking to toll the statute of limitations, to establish that the continuing-representation doctrine applies." *Id.* at 231 (quoting *Kindle v. Morisset, Schlosser, Ayer & Jozwiak*, 217 F.3d 602, 604 (8th Cir. 2000)).

The "material facts" on that question were "not genuinely in dispute." *AlBritton*, 299 Va. at 403. The 2008 agreement was explicitly limited to a specific undertaking: "[f]ile a chapter 11 bankruptcy petition and obtain confirmation of the plan of reorganization." Any legal work for the debtor after the conversion to chapter 7 would have been a different undertaking from the one set forth in that letter.

SDI offers several arguments to resist that conclusion, but we find them unpersuasive. To start, it argues that conversion to chapter 7 did not create a new bankruptcy case and related back to the filing date of the original chapter 11 bankruptcy. *See* 11 U.S.C. § 348(a) ("Conversion . . . does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."). That is true. The commencement date for the bankruptcy proceeding has consequences for determining such things as the voidability of preferential transfers made 90 days before the bankruptcy filing, as well as the date for determining exemptions and lien priorities. *See generally* 3 Collier on Bankruptcy ¶ 348.02, at 348-7 to 348-10 (16th ed. 2023). But that administrative aspect of bankruptcy practice sheds no light on what the 2008 engagement letter specified as the subject of Conway's legal representation. *That* undertaking contemplated *solely* a chapter 11 proceeding in which Conway would represent SDI as the debtor-in-possession to obtain a plan of reorganization. It did not

contemplate a converted chapter 7 proceeding in which Conway could be paid for its services, under *Lamie*, *only* if retained by the trustee as special counsel.[8]

SDI also argues that disputed facts precluded summary judgment because Smith believed that the 2008 agreement encompassed the chapter 7 proceeding as well. But crediting Smith's subjective belief as true for summary-judgment purposes does not create a disputed material fact because Smith's subjective belief is inadmissible to contradict the terms of the engagement letter. "The parol-evidence rule provides that 'where [the] parties have reduced their contract to a writing [that] imposes a legal obligation in clear and explicit terms[,] the writing [is] the sole memorial of that contract, and it is conclusively concluded that the writing contains the whole contract, and is the sole evidence of the agreement.'" *Worsham v. Worsham*, 74 Va. App. 151, 165 (2022) (alterations in original) (quoting *Jim Carpenter Co. v. Potts*, 255 Va. 147, 155 (1998)). "Parol evidence is . . . 'never competent to show merely what one of the parties to a contract thought.'" *Id*. at 173 n.6 (quoting *Title Ins. Co. of Richmond v. Howell*, 158 Va. 713, 718 (1932)). *See also CSE, Inc. v. Kibby Welding, LLC*, 77 Va. App. 795, 806 (2023) ("[T]he objective reliability of a contract . . . depends on the 'external manifestation' of the parties' bargained-for exchange, not their 'undisclosed mental state.'" (quoting Restatement (Second) of Contracts § 71 cmt. b (1981))). The parol-evidence rule thus bars evidence of Smith's belief that the 2008 agreement would extend to work by Conway following a chapter 7 conversion, because such evidence contradicts the written engagement letter, which limited Conway's engagement to a chapter 11 proceeding.

---

[8] Because the debtor's bankruptcy attorney in a chapter 7 liquidation cannot be paid from the bankruptcy estate for post-petition work on behalf of the debtor, *Lamie*, 540 U.S. at 532, the attorney must exercise great care when structuring the engagement *before* filing a chapter 7 petition. *See generally* Va. Legal Ethics Op. 1883 (2015); 3 Collier on Bankruptcy ¶ 330.02[3][a], at 330-18 to 330-19.

The parol-evidence rule, of course, would not preclude SDI from arguing that the parties' *later* agreement or course of conduct *modified* the 2008 engagement letter. The parol-evidence rule "has no application to *subsequent* parol agreements between the parties." *Piedmont Mt. Airy Guano Co. v. Buchanan*, 146 Va. 617, 626 (1926) (emphasis added). In fact, SDI argued in the trial court that the 2008 engagement letter was "modified and extended" by Conway's work on the case after the conversion, or "modified by signature of defendants on post-Chapter 7 conversion filings." The party asserting modification, however, must prove that the parties had "a 'mutual intention' that the modification be effective, and such intention must be shown by 'clear, unequivocal and convincing evidence, direct or implied.'" *Gov't Emps. Ins. Co. v. Hall*, 260 Va. 349, 356 (2000) (quoting *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73 (1983)); *Reston Surgery Ctr. v. City of Alexandria*, 62 Va. App. 549, 565 (2013) (same); *Orthopaedic & Spine Ctr. v. Muller Martini Mfg. Corp.*, 61 Va. App. 482, 493-94 (2013) (same).

The trial court rejected SDI's modification theory. It found that Conway's "[s]igning of pleadings, the filing of pleadings, the actions in conducting discovery with respect to the adversary proceedings . . . in their role as special counsel to the trustee . . . did not, in my view, . . . extend the life of the written contract."

Having lost that claim in the trial court, SDI has not tried to revive it here. That "particular argument has been abandoned for purposes of appeal because it was not raised in appellant's opening brief on appeal." *Farmer v. Commonwealth*, 62 Va. App. 285, 295 (2013) (citing Rule 5A:20(e)). As a result, we need not address whether the trial court correctly found that the parties did not modify the 2008 engagement letter to cover anything beyond the chapter 11 proceeding.

*C. Estoppel*

Lastly, relying on Code § 8.01-229(D)(ii) and the doctrine of equitable estoppel, SDI argues that Conway should be estopped to plead the statute of limitations. SDI bore the "burden to prove its entitlement to the tolling of the statute of limitations." *Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll Farm, L.L.C.*, 290 Va. 5, 7 (2015). SDI has failed to carry that burden here.

Code § 8.01-229(D) provides:

> When the filing of an action is obstructed by a defendant's (i) filing a petition in bankruptcy . . . or (ii) using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

The statutory predecessor of this provision dates to the earliest days of the Commonwealth.[9] To toll the limitations period, the plaintiff "must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file [the] action." *Mackey v. McDannald*, 298 Va. 645, 655 (2020) (quoting *Grimes v. Suzukawa*, 262 Va. 330, 332 (2001)). "Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action." *Id.* at 656 (quoting *Culpeper Nat'l Bank v. Tidewater Improvement Co.*, 119 Va. 73, 83-84 (1916)). And not just any act will do. "The requisite obstruction 'must consist of some trick or artifice preventing inquiry, or calculated to hinder a

---

[9] *See* Act of Dec. 19, 1792, § 14, *in Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as Are Now in Force* 116 (1794) (providing that "if any . . . defendants . . . shall abscond or conceal themselves, or by removal out of this Country . . . when such cause of action accrued, or by any other indirect ways or means, defeat or obstruct any person . . . from bringing . . . any of the aforesaid actions within the respective times limited by the Act, . . . such . . . defendants are not to be admitted to plead this Act in bar to any of the aforesaid actions"). The statute has been revised and reenacted over the centuries until its appearance today as Code § 8.01-229(D). *See* Code of 1950, § 8-33; Code of 1904, § 2933; Code of 1849, tit. 45, ch. 149, § 17; 1 Rev. Code p. 491, ch. 128, § 14 (1819).

discovery of the cause of action by the use of ordinary diligence.'" *Id.* (quoting *Culpeper Nat'l Bank*, 119 Va. at 84). *See also Newman v. Walker*, 270 Va. 291, 298 (2005) ("The fraud which will relieve the bar of the statute must be of that character which involves moral turpitude, and must have the effect of debarring or deterring the plaintiff from his action." (quoting *Culpeper Nat'l Bank*, 119 Va. at 83)).

Yet SDI has offered no facts to show how Conway obstructed the filing of this legal-malpractice lawsuit or otherwise prevented SDI from discovering the claim. To the contrary, Smith said in his declaration that he believed in 2011 that the adversary claims were worth between "$1.86 and $2.01 million," far more than the $60,000 settlement sought by the trustee. Smith even filed a *pro se* objection in January 2011 to the trustee's motion to confirm the settlements. At oral argument here, SDI's counsel could not identify any conduct by Conway to obstruct the filing of this legal-malpractice lawsuit after the bankruptcy case was administratively closed in 2012.

SDI's common-law equitable-estoppel theory fares no better. The statute-of-limitations bar is "absolute . . . unless under certain extraordinary circumstances . . . the positive and plain requirements of an equitable estoppel preclude its application." *Brunswick Land Corp. v. Perkinson*, 153 Va. 603, 608 (1930); *see also Westminster Inv. Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 547 (1989) (same); *Boykins Narrow Fabrics Corp. v. Weldon Roofing and Sheet Metal, Inc.*, 221 Va. 81, 85 (1980) (same).[10] "Two such extraordinary circumstances that have

---

[10] The elements of equitable estoppel must be proven "by clear, precise, and unequivocal evidence." *Boykins*, 221 Va. at 86. The elements are:

> (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the fact; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the

- 15 -

arisen in the past are (1) where fraud prevents a plaintiff from asserting its claims, or (2) where the defendant 'has by affirmative act deprived the plaintiff of his power to assert his cause of action in due season.'" *Birchwood-Manassas*, 290 Va. at 7 (quoting *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 117 (2008)).

As with SDI's argument under Code § 8.01-229(D)(ii), the required grounds are also absent here. SDI insists that Conway breached its fiduciary duty and had a conflict of interest by simultaneously representing SDI and the bankruptcy trustee after the chapter 7 conversion. But "conflicts of interest and breaches of fiduciary duties" do not qualify as "an extraordinary circumstance" to equitably toll the statute of limitations when such transgressions, as here, do not prevent the plaintiff from filing suit. *Birchwood-Manassas*, 290 Va. at 8. In short, equitable estoppel does not apply because SDI has identified no fraudulent or deceptive conduct by Conway that prevented or delayed SDI from suing Conway for legal malpractice.

CONCLUSION

The trial court correctly found that Conway's 2008 written engagement letter specified a particular undertaking—representing SDI in a chapter 11 proceeding to obtain confirmation of a plan of reorganization. That undertaking ended in March 2010, when the bankruptcy case was converted to a chapter 7 proceeding. Conway's filing of pleadings afterward was on behalf of the bankruptcy trustee, who engaged Conway as special counsel. Any legal advice that Conway also provided to SDI after the conversion was a different undertaking from the one governed by the written agreement. And any such undertaking was therefore not under the 2008 written engagement, but under an "unwritten contract, express or implied." Code § 8.01-246(4). So the

---

other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming estoppel was misled to his injury.

*Id*.

- 16 -

claim that Conway committed malpractice during that later undertaking was subject to a three-year limitations period. And because SDI sued Conway for legal malpractice more than three years after the bankruptcy case closed, the trial court correctly found that the malpractice claim was time-barred.

*Affirmed.*

Causey, J. dissenting.

Summary judgment is a drastic remedy that is reserved for matters where there are no material facts genuinely in dispute. Here, several key facts remain in dispute which are critical to the resolution of this case. Because summary judgment is inappropriate where there are material facts genuinely in dispute, I respectfully dissent.

"Under well-settled principles, we review the record applying the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88 (2009) (citing *Dickerson v. Fatehi*, 253 Va. 324, 327 (1997); *Carson v. LeBlanc*, 245 Va. 135, 139-40, (1993)). "In this context, we have repeatedly held that summary judgment is a drastic remedy, available only when there are no material facts genuinely in dispute." *Id*. (citing *Stockbridge v. Gemini Air Cargo, Inc*., 269 Va. 609, 618 (2005); *Smith v. Smith*, 254 Va. 99, 103 (1997); *Slone v. Gen. Motors Corp.*, 249 Va. 520, 522 (1995)). "Thus, if the evidence is conflicting on a material point or if reasonable persons may draw different conclusions from the evidence, summary judgment is not appropriate." *Id*.

The trial court improperly decided several disputed facts at the summary judgment hearing. First, the court decided that Conway's actions in continuing to represent Smith "to the extent that they existed, after the conversion to a Chapter 7 in 2010 was governed under an implied contract." Although the majority finds this fact immaterial, this is a highly disputed fact between the parties that is outcome determinative. The engagement letter had a provision stating, "[a] separate agreement will be required for other services beyond those described in this Agreement." Although Conway did outline the scope of their representation in the engagement letter, Smith argued that in addition to the letter mentioned by the majority, Conway continued to

- 18 -

represent Smith by filing schedules and attending a creditors' meeting for Smith after the conversion. The record is void of any evidence that Conway executed a subsequent engagement agreement, nor did they execute a termination of representation notice. Conway never reduced their continued representation to writing. The burden does not fall on Smith to reduce the parties' continued representation to writing. Most importantly, this Court cannot allow Conway to impermissibly benefit from: (1) failing to create the additional writing and (2) finding on summary judgment that there was an implied contract, instead of an extension of the original contract as Smith argued. Here, Conway had a duty to keep Smith informed of their representation, or lack thereof, not only based on the Rules of Professional Conduct, but pursuant to section seven of the engagement letter which states in part "If we elect to terminate our representation, then we will take all steps reasonably necessary and will cooperate as reasonably required to free us of any further obligation to perform legal services, including the execution of any documents necessary to complete our withdrawal from representation." The record is void of any evidence to support that Conway met its contractual obligation regarding termination of the parties' agreement. There is no evidence of a termination letter, or an effort made by Conway to inform Smith of the intent to terminate representation. Conway ignored their ethical and contractual obligation to Smith, which is a basis of Smith's legal malpractice claim. It was improper for the trial court to resolve this issue in favor of Conway on summary judgment by finding that there was an implied contract for the Chapter 7 representation.

The trial court also decided the date the action accrued, which is yet another highly disputed fact. In this case, there were a minimum of four dates argued or pleaded that would trigger the action's accrual: March 17, 2010 (date of conversion from Chapter 11 to Chapter 7); March 17, 2011 (settlement of adversary proceedings); September 12, 2011 (dismissal of adversary proceeding); and September 10, 2012 (date Chapter 7 was administratively closed).

The trial court determined that September 12, 2011, was the date that the action accrued. In finding that this date, September 12, 2011, triggers the statute of limitations, the trial court ruled on a material fact genuinely in dispute in the record, and necessary to the resolution of this case. Therefore, it was improper for the trial court to decide the accrual date on summary judgment.

Additionally, at trial, Smith argued that the undertaking doctrine, continuing representation, and any other exceptions are factually disputed and should not be ruled on at the summary judgment stage. I agree. The trial court judge specifically documented on the record the undisputed facts that the court found. The record contains over two pages of the trial court's recitation of the undisputed facts. Neither the undertaking doctrine nor facts material to the undertaking doctrine were among them. Therefore, this Court may not uphold summary judgment based on the undertaking doctrine, as material facts necessary to the applicability of this doctrine are in genuine dispute. "As a general rule, we serve as 'a court of review, not of first view.'" *Burkholder v. Palisades Park Owners Ass'n, Inc.*, 76 Va. App. 577, 591 (2023) (quoting *Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 23 (2022)). The parties did not brief or argue the undertaking doctrine, and this Court is not to try the case for them. One can reasonably conclude by the parties' absence of an argument based on the undertaking doctrine on appeal that arguments based on this doctrine are not entitled summary judgment in this case. This Court cannot decide the better argument for the parties. "[I]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Coward v. Wellmont Health Sys., d/b/a Lonesome Pine Hosp.*, 295 Va. 351, 367 (2018) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (applying Rule 5A:20(e))).

As the majority notes, "[s]ummary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, ___ Va. ___, ___ (Apr. 6, 2023).  Summary judgment is inappropriate here as there are several material facts that remain genuinely in dispute and the record is void of any evidence of Conway being entitled to judgment as a matter of law.  For these reasons, I would hold that the circuit court erred in granting Conway's motion for summary judgment.  Accordingly, I would reverse the judgment of the circuit court and remand this case for further proceedings.