PRESENT: All the Justices.

DONALD L. SHIPMAN, INDIVIDUALLY AND
AS TRUSTEE, ET AL.

                                            OPINION BY
v.  Record No. 030500              JUSTICE G. STEVEN AGEE
                                          MARCH 5, 2004
FREDERICK R. KRUCK, JR., ESQ.


            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        John E. Kloch, Judge

     The determinative issue in this appeal is when the

appellants' cause of action for legal malpractice accrued for

purposes of the statute of limitations.

            I.   BACKGROUND AND PROCEEDINGS BELOW

     On January 16, 1998, Donald L. Shipman and his wife, Kym L.

Shipman (collectively, "the Shipmans") hired Frederick H. Kruck,

Jr. ("Kruck") to defend them in an action brought by one of the

Shipmans' creditors.  The Shipmans informed Kruck that shielding

their residence from the collection efforts of creditors was

their primary objective.  The Shipmans also informed Kruck that

the residence was held in trust under a 1984 Declaration of

Trust ("the Trust").  The Shipmans gave Kruck an unsigned and

undated copy of the Declaration of Trust, reflecting Mr. Shipman

was the Trust's trustee holding the trust property for the

benefit of Mrs. Shipman and their children.  The Shipmans had

conveyed their residence by deed to Mr. Shipman as Trustee under the Trust.[1]

On March 9, 1998, Kruck filed a joint Chapter 7 petition on behalf of the Shipmans in the United States Bankruptcy Court for the Eastern District of Virginia.  The Shipmans agreed to the bankruptcy filing based on Kruck's advice.

Kruck represented the Shipmans in the initial stages of the bankruptcy proceedings, but certain of the Shipmans' creditors and the Bankruptcy Trustee asserted the Trust was revocable and therefore the Trust's assets were nonexempt property of the Shipmans' bankruptcy estate subject to sale and administration by the Bankruptcy Trustee.  On January 19, 1999, Kruck withdrew as the Shipmans' counsel and advised them that he would be more valuable as a witness in the bankruptcy proceedings concerning the Trust.  The Shipmans promptly hired new counsel to represent them in the bankruptcy proceedings.[2]

During the subsequent bankruptcy proceedings Kruck testified that he erroneously assessed the trust documents as establishing an irrevocable trust when he advised the Shipmans

---

[1] By an examination of land title records, Kruck verified the real estate conveyances to the trust, but found no copy of the trust document on record.

[2] The parties disagree as to whether new counsel was hired explicitly to cure Kruck's negligence.  Our resolution of this case does not depend on why, or even if, the Shipmans hired new counsel.

to file bankruptcy.  On March 8, 2000, the bankruptcy court entered an order declaring the Trust to be a revocable trust and authorizing the Bankruptcy Trustee to sell the Shipmans' residence as an asset of the bankruptcy estate for the payment of the Shipmans' creditors.  To prevent their residence from being sold to a third party, the Shipmans purchased the residence for $427,000 from the Bankruptcy Trustee on June 29, 2001.

On January 8, 2002, the Shipmans filed a motion for judgment against Kruck in the Circuit Court of the City of Alexandria alleging counts for negligence, breach of contract, and negligent infliction of emotional distress.  They asserted that Kruck was negligent in failing to advise them that the Trust was revocable and could be revoked by the Bankruptcy Trustee if they filed for bankruptcy.  Kruck filed a demurrer and plea in bar alleging the Shipmans lacked standing to bring their suit because any claims they might have belonged to the bankruptcy estate and must be asserted by the Bankruptcy Trustee.  Before argument on Kruck's demurrer and plea in bar the Shipmans requested a nonsuit which the trial court granted on March 12, 2002.

The Shipmans then requested and received an order from the bankruptcy court abandoning any interest in an action for malpractice against Kruck as part of the bankruptcy estate.

3

Armed with the abandonment order, the Shipmans filed a new motion for judgment against Kruck on September 11, 2002, in which they renewed the counts for negligence and breach of contract. Kruck filed another demurrer and plea in bar alleging that the Shipmans' action was barred by the three-year statute of limitations applicable to breach of an oral contract. He asserted that the limitations period expired on January 19, 2002, three years after Kruck's representation of the Shipmans terminated.

The trial court determined that because the action was based upon an oral contract, the applicable statute of limitations period was three years. The trial court further held that the Shipmans' cause of action accrued when Kruck's representation of the Shipmans terminated on January 19, 1999, and that filing the nonsuit did not toll the running of the statute of limitations. Therefore, the trial court sustained Kruck's plea in bar.[3]

The Shipmans filed a motion for reconsideration alleging a written contract existed (and thus the correct limitations period was five years) and that their legal malpractice claim did not accrue until there was payment on a judgment creating damages. The trial court denied the motion, ruling the Shipmans

_____

[3] The trial court did not rule on Kruck's demurrer and the Shipmans did not assign error to the trial court's ruling on the effect of the nonsuit.

4

failed to prove the existence of a written contract and that, in any event, it was not pled. With regard to the accrual issue, the trial court held that the Shipmans' cause of action accrued "when counsel was retained and paid," referring to the counsel substituted for Kruck.

On appeal, the Shipmans assert two assignments of error. First, they contend the trial court erred in granting Kruck's plea in bar and denying their motion for reconsideration because their action was filed within the applicable three year limitations period.[4] Second, they assert the trial court erred in holding that their cause of action accrued when Kruck's representation of them ended and new counsel was retained and paid because there was no evidence in the record as to when new counsel was paid.

## II. STANDARD OF REVIEW

"A cause of action for legal malpractice requires the existence of an attorney-client relationship which gave rise to a duty, breach of that duty by the defendant attorney, and that the damages claimed by the plaintiff client must have been proximately caused by the defendant attorney's breach." Rutter v. Jones, Blechman, Wolz and Kelly, 264 Va. 310, 313, 568 S.E.2d

---

[4] No assignment of error was made to the trial court's ruling that the five year statute of limitations applicable to written contracts did not apply. The parties now agree the applicable statute of limitations is three years, the period applicable to oral contracts.

5

693, 695 (2002).  The statute of limitations for legal malpractice actions is the same as those for breach of contract because although legal malpractice actions sound in tort, it is the contract that gives rise to the duty.  MacLellan v. Throckmorton, 235 Va. 341, 343, 367 S.E.2d 720, 721 (1988); Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976)); see also Code § 8.01-246 (setting forth the limitations periods for breach of contract actions).

## III.  ANALYSIS

The parties agree the alleged negligent act, the breach of Kruck's duty to the Shipmans, occurred when the bankruptcy petition was filed on March 9, 1998.  The parties differ, however, in affixing the date when the statute of limitations on the Shipmans' legal malpractice action accrued.

Code § 8.01-230 states, in pertinent part, that "[i]n every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run . . . when the breach of contract occurs in actions ex contractu and not when the resulting damage is discovered."  We have previously stated that "[a] right of action is a remedial right to presently enforce a cause of action."  Stone v. Ethan Allen, Inc., 232 Va. 365, 368, 350 S.E.2d 629, 631 (1986).  Although a cause of action and a right

6

of action may accrue simultaneously, a right of action cannot arise until a cause of action exists.  Id.

The Shipmans contend that until the bankruptcy court finally adjudicated the Trust to be revocable and therefore a nonexempt part of the Shipmans' bankruptcy estate, they had no cause of action (and thus no right of action) against Kruck. This is so, the Shipmans contend, because until that point in time they had no injury or damages – an essential element of a legal malpractice cause of action.  Alternatively, citing Allied Productions v. Duesterdick, 217 Va. 763, 232 S.E.2d 774 (1977), the Shipmans argue there could be no damages until there was payment on an underlying judgment under the so-called "payment rule."  The Shipmans contend the "payment" did not occur, and the limitations period did not begin to run, until June 29, 2001, when they purchased their residence from the Bankruptcy Trustee to prevent its sale.

Kruck asserts the statute of limitations began to run when the bankruptcy petition was filed, subject to the "continuous representation rule" set forth in Keller v. Denny, 232 Va. 512, 352 S.E.2d 327 (1987).

### A.   DETERMINATION OF INJURY

The parties agree that Kruck breached his duty to the Shipmans on March 9, 1998, when the bankruptcy petition was filed.  The issue in controversy is whether on that date, or at

7

a later time, the Shipmans sustained injury or damage sufficient to constitute a cause of action.

We have stated on more than one occasion that "[d]amage is an essential element of a cause of action.  Without some injury or damage, however slight, a cause of action cannot accrue." Keller, 232 Va. at 520, 352 S.E.2d at 332; see Stone, 232 Va. at 365, 368-69, 350 S.E.2d at 631-32; accord First Va. Bank-Colonial v. Baker, 225 Va. 72, 82, 301 S.E.2d 8, 13-14 (1983); Locke v. Johns-Manville Corp., 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981); Caudill v. Wise Rambler, 210 Va. 11, 13, 168 S.E.2d 257, 259 (1969).  "In the absence of any injury or damage, there is no cause of action."  Rutter, 254 Va. at 313, 568 S.E.2d at 695.  Moreover, we have said that it is immaterial whether all the damages resulting from the negligent act were sustained at the time that act occurred.  The running of the limitations period will not be tolled by the fact that the actual or substantial damages did not occur until a later date.  Stone, 232 Va. at 369, 350 S.E.2d at 632; Housing Authority v. Laburnum Corp., 195 Va. 827, 839, 80 S.E.2d 574, 581 (1954)).

In Virginia,

> [w]e have followed the general rule that the
> applicable period of limitation begins to run
> from the moment the cause of action arises rather
> than from the time of discovery of injury or
> damage, and we have said that difficulty in
> ascertaining the existence of a cause of action
> is irrelevant.

8

<u>Virginia Military Institute v. King</u>, 217 Va. 751, 759, 232 S.E.2d 895, 900 (1977) (hereinafter "VMI") (citing <u>Laburnum</u>, 195 Va. at 838, 80 S.E.2d at 580-81). In <u>VMI</u> we commented that this rule may produce inequities by triggering a statute of limitations "when the injury or damage is unknown or difficult or even incapable of discovery . . . ." <u>Id.</u> at 760, 232 S.E.2d at 900. Nevertheless, we concluded that it was the role of the General Assembly, not the judiciary, to change a rule of law that has been relied upon by bench and bar for so long. <u>Id.</u> We continue to adhere to that principle. Under Code § 8.01-230 the injury is deemed to accrue "when the breach of contract occurs . . . not when the resulting damage is discovered."

Upon the filing of the bankruptcy petition the Shipmans incurred a legal injury. Although the injury could not be delineated as a sum certain or reflected as a final judgment on the merits, there was injury sufficient to commence a cause of action for legal malpractice. First and foremost, the Shipmans lost control of their assets to the Bankruptcy Trustee, including the power to revoke the Trust and receive the reversion. The filing of the bankruptcy, in and of itself, vested those rights in the Bankruptcy Trustee as a matter of law. 11 U.S.C. §§ 541, 542, 544, 704 (2000). This injury in particular countermanded their express wishes to protect the

9

Trust property from their creditors.  Even the Shipmans' right to bring a legal malpractice claim vested in the Bankruptcy Trustee, which necessitated their initial nonsuit.  See National Am. Ins. Co. v. Ruppert Landscaping Co., 187 F.3d 439, 441 (4th Cir. 1999) ("If a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim."); Ellwanger v. Budsberg, 140 Bankr. 891, 903 (Bankr. W.D. Wash. 1992) (state court actions for legal malpractice are property of the bankruptcy estate); Scarlett v. Barnes, 121 Bankr. 578, 579 (W.D. Mo. 1990) (state court actions for legal malpractice are property of the bankruptcy estate).  Further, the Shipmans admitted in their motion for judgment that in addition to the costs of repurchasing their residence, they incurred "additional costs in legal fees, litigation costs, and other costs associated with the bankruptcy filing and litigation."  (Emphasis added).  The Shipmans' own pleadings thus admit that the filing fee for the bankruptcy itself is a recoverable damage.[5]  As we note below, these damages need only be incurred, not paid.

The unity of duty, breach, and damage required to establish a cause of action occurred on March 9, 1998, when the bankruptcy petition was filed.  It was at that time the Shipmans' cause of

_____

[5] The Shipmans also allege their credit rating was damaged by the bankruptcy filing.

action against Kruck attached, albeit vested in the Bankruptcy Trustee.  Having determined that the Shipmans' cause of action existed as of the time the bankruptcy was filed, the question then becomes, under Code § 8.01-230, whether the Shipmans' right of action came into existence simultaneously with their cause of action or whether it accrued at another time.

### B.    THE CONTINUOUS REPRESENTATION RULE

Code § 8.01-230 dictates the right of action shall accrue at the time of the breach.  Thus, in this case, the Shipmans' right of action came into existence and their cause of action accrued contemporaneously with the filing of the bankruptcy petition.  In other words, the Shipmans could have brought an action against Kruck at any time after the bankruptcy petition was filed.  However, that does not necessarily establish the date the statute of limitations began to run for purposes of a legal malpractice action.  In <u>Keller</u> we held that

> when malpractice is claimed to have occurred
> during the representation of a client by an
> attorney with respect to a particular undertaking
> or transaction, the breach of contract or duty
> occurs and the statute of limitations begins to
> run when the attorney's services rendered in
> connection with that particular undertaking or
> transaction have terminated.

<u>Keller</u>, 232 Va. at 518, 352 S.E.2d 330.  This axiom is commonly termed the "continuous representation rule," which takes into consideration the special trust and confidence inherent in the

11

attorney-client relationship. Id. at 518, 352 S.E.2d at 331.

"The relationship between a lawyer and his client is a fiduciary

relationship, one which commands the highest fidelity to a most

solemn trust, for the lawyer is the expert and the client is

utterly dependent upon his knowledge, his skill, and his honor."

Duesterdick, 217 Va. at 767, 232 S.E.2d at 776-77 (Poff, J.,

dissenting); see also MNC Credit Corp. v. Sickels, 255 Va. 314,

318, 497 S.E.2d 331, 333 (1998) (noting "the highly confidential

and fiduciary relationship between an attorney and client").[6]

In Keller we made clear that the continuous representation

rule applies "only when a continuous or recurring course of

professional services relating to a particular undertaking is

shown to have taken place over a period of time." Keller, 232

Va. at 518, 352 S.E.2d at 331. The proper inquiry is not

whether a general attorney-client relationship has ended, but

instead, when the attorney's work on the particular undertaking

at issue has ceased. Id. If malpractice is alleged with

respect to "a single, isolated act, Code § 8.01-230 . . .

---

[6] Code § 8.01-230 was amended in 1996. However, the changes do not materially affect the issue under consideration here and the statute as amended does not explicitly abrogate the continuous representation rule this Court expressed in Keller. See Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001) ("When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly.")

12

dictates that the statute of limitations begins to run when that act is performed, regardless of the time of its discovery." Id. at 518-19, 352 S.E.2d at 331.

Applying the criteria of the continuous representation rule to the case at bar the record reflects that the attorney-client relationship between Kruck and the Shipmans was for the particular undertaking concerning the creditor's action and the resulting bankruptcy. Kruck's advice to the Shipmans to file for bankruptcy was an important and integral part of his representation in that matter. For statute of limitations purposes, the continuous representation rule effectively tolled the accrual of the statute of limitations for the Shipmans' cause of action from the filing of bankruptcy until January 19, 1999, the date Kruck's representation terminated regarding the particular undertaking for which he was engaged.

For purposes of the continuous representation rule, it is irrelevant whether substitute counsel is acquired or when that occurs. The date the alleged negligent attorney's representation of the client terminates is the relevant date which commences the running of the statute of limitations. Unless another rule of law tolls the accrual date further, the Shipmans thus had until January 19, 2002, to timely file their legal malpractice claim against Kruck.

13

## C. THE "PAYMENT RULE"

In Duesterdick this Court held that a motion for judgment asserting legal malpractice that fails to allege actual damages fails to state a cause of action, and is demurrable.

> [W]hen a client has suffered a judgment for money damages as the proximate result of his lawyer's negligence such judgment constitutes actual damages recoverable in a suit for legal malpractice only to the extent such judgment has been paid.  Here, the motion for judgment failed to allege such actual damages.  It failed, therefore, to state a cause of action, and the trial court correctly sustained the demurrer.

217 Va. at 766, 232 S.E.2d at 776.  The Shipmans aver that our decisions in Duesterdick and Rutter stand for the "payment rule," which they construe to mean "that a cause of action for legal malpractice does not accrue until there is actual injury or damages, and there is, at a minimum, a judgment in any underlying litigation on an issue central to the malpractice claim."  They argue that the outcome in Rutter was based on this view of the Duesterdick "payment rule."

According to the Shipmans, application of the "payment rule" means the statute of limitations did not begin to run until they had suffered a judgment (the bankruptcy court's March 8, 2000 order declaring the Trust revocable) and they had made payment on that judgment by purchasing the residence from the Bankruptcy Trustee on June 29, 2001.  The Shipmans thus contend they had three years from that date, until June 29, 2004, to

14

bring their malpractice action.  Since Kruck's alleged breach of duty occurred on March 8, 1998 with the filing of the bankruptcy petition, the Shipmans' "payment rule" would allow them to file their malpractice claim more than six years after the breach.

Kruck responds that Duesterdick is "not a statute of limitations or accrual case but instead simply stands for the proposition that attorneys are only liable for actual damages which their errors proximately cause their clients to incur." Moreover, Kruck asserts the "payment rule" only applies "when a client has suffered a judgment for money damages as the proximate result of his lawyer's negligence."  Duesterdick, 217 Va. at 766, 232 S.E.2d at 776.

Neither Duesterdick nor Rutter involved a statute of limitations issue.  In Duesterdick, the trial court sustained a demurrer to a motion for judgment which failed to sufficiently plead damages.  The motion for judgment did not allege the plaintiff had made any payment upon a default judgment which was the basis of the alleged legal malpractice.  In affirming the trial court, we never considered the statute of limitations in any way.

Rutter involved a legal malpractice claim brought by the executor of an estate against a law firm that had drafted the decedent's will and trust documents.  The estate alleged that the testamentary documents failed to distribute charitable

15

donations according to the decedent's wishes, resulting in a significant estate tax liability. The estate contended a cause of action against the law firm arose during the decedent's lifetime because she was entitled to recover the fees paid to the law firm for drafting defective testamentary documents. We held, however, that the additional amount of estate tax, not the fee decedent paid to the attorneys, was the injury or damage proximately caused by the legal malpractice. Rutter, 264 Va. at 314, 568 S.E.2d at 695. Therefore, no cause of action came into existence during the decedent's lifetime as to the estate tax liability and thus the claim did not survive her death. Id.

The distinctly different interpretations of the "payment rule" expressed by the litigants illustrates the difficulty in construing our holding in Duesterdick with our decisions in Stone, Laburnum, VMI, and Keller and other cases for purposes of the accrual of the statute of limitations. If, as we have consistently held, even slight damage sustains a cause of action, it is difficult to discern how the existence of a cause of action can be postponed until some payment in partial or whole satisfaction of the client's damage has occurred. The infirmities of such a rule are obvious.

First and foremost, adherence to a payment rule would vest the aggrieved client with the power to forestall the running of the statute of limitations by the deferral of payment,

regardless of whether he has already suffered damages sufficient to give rise to his cause of action. It is the legislature that decides when causes of action shall accrue, not plaintiffs.

Second, such a rule does not protect a client who, due to bankruptcy or insolvency, cannot afford to pay whatever damage he has suffered. "If the client has no cause of action until he has paid the judgment against him, then the larger the judgment, the greater the client's burden and the lawyer's impunity; the greater the injury wrongfully inflicted, the less the liability of the wrongdoer." Duesterdick, 217 Va. at 767, 232 S.E.2d at 777 (Poff, J., dissenting).

Finally, the "payment rule", in a statute of limitations context, would work an injustice on attorneys who may be forced to defend allegations of malpractice brought many years after the alleged breach occurred, dependent entirely upon the ability or whim of the complaining client to pay the resulting damages. In this regard the "payment rule" defeats the primary objectives of statutes of limitations, such as compelling "the exercise of a right of action within a reasonable time," Street v. Consumers Min. Corp., 185 Va. 561, 575, 39 S.E.2d 271, 277 (1946), preventing surprise, and avoiding problems "incident to the gathering and presentation of evidence when claims have become stale." Truman v. Spivey, 225 Va. 274, 279, 302 S.E.2d 517, 519

17

(1983).  Application of the "payment rule" to the facts of the case at bar, as the Shipmans urge, illustrates these defects.

Even if we determined that when the Shipmans hired the second attorney they incurred legal fees, and thus damages sufficient to establish a cause of action, there is no indication in the record as to when those fees were paid.  If they had given a retainer to that attorney on their first visit, presumably the "payment rule" would then be satisfied and their cause of action would begin to accrue.  Suppose, instead, the Shipmans did not pay their attorney for six months, one year, or longer.  Such a scenario exemplifies why the payment rule would frustrate the will of the legislature and circumvent the objectives of the statutes themselves if made applicable in a statute of limitations context.

In the context of a judgment entered against a client by virtue of his attorney's purported negligence, we said in Duesterdick, "until the client has made a payment on that debt he has suffered no actual loss or damage."  217 Va. at 766, 232 S.E.2d at 776.  For the reasons set forth above, we conclude that this is an incorrect statement of law.  As Justice Poff stated in his dissent in Duesterdick, a client who suffers the entry of a judgment against him indeed suffers a legal injury or damage.

> There is little remote, speculative, or contingent about a money judgment.  Indeed, it is a legal creature of singular dignity.  Such a judgment calls into existence what did not exist before, *viz.,* a liquidated debt.  Except for jurisdictional defect, that judgment and the debt it creates cannot be collaterally attacked and is actionable in every state.  The recorded judgment constitutes a continuing lien (securing the debt and the interest as it accrues) on the debtor's assets (presently owned and later acquired), a lien that is enforceable by public sale.  Subject to the statute of limitations, the debt survives the debtor's death and may be revived against his personal representative.  Code § 8-396 (Cum. Supp. 1976).  Some judgments, such as that suffered by the client here, survive bankruptcy. 11 U.S.C. § 35.

Id., 217 Va. at 768, 232 S.E.2d at 777.

Accordingly, our prior decision in Duesterdick is overruled and cannot be viewed as supporting the Shipmans' argument, which we reject.

IV.  CONCLUSION

"When the trial court has reached the correct result for the wrong reason, we will assign the correct reason and affirm that result."  Mitchem v. Counts, 259 Va. 179, 191, 523 S.E.2d 246, 253 (2000); accord Hartzell Fan, Inc. v. Waco, Inc., 256 Va. 294, 303, 505 S.E.2d 196, 202 (1998); Ridgwell v. Brasco Bay Corp., 254 Va. 458, 462, 493 S.E.2d 123, 125 (1997); Harrison & Bates, Inc. v. Featherstone Assoc. Ltd. Partnership, 253 Va. 364, 369, 484 S.E.2d 883, 886 (1997).  Although the trial court was initially correct in its ruling from the bench, it later

19

held, incorrectly, that the Shipmans' cause of action **accrued** "when counsel was retained and paid."

For the reasons stated above, the Shipmans' cause of action for legal malpractice accrued at the time of the attorney's breach, subject to the continuous representation rule.[7] Therefore, the Shipmans failed to timely prosecute their claim against Kruck and the trial court correctly granted Kruck's plea in bar. We will therefore affirm the judgment of the trial court.

<u>Affirmed</u>.

---

[7] No argument was made in the present litigation concerning any tolling effect of the bankruptcy on the Shipmans' malpractice claim under federal law or Code § 8.01-229, or concerning the statute of limitations effect on the nonsuit of the original motion for judgment. Hence, we express no opinion on such arguments in the present disposition.