COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Fulton and Lorish

RALORD ALLAH TUNG

v.      Record No. 1690-24-4

WESTLAKE LEGAL GROUP, ET AL.

MEMORANDUM OPINION[*]
PER CURIAM
DECEMBER 9, 2025

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan D. Frieden, Judge

(Alexander P. Faig; Moore, Christoff & Siddiqui, PLLC, on briefs),
for appellant.

(Jacqueline A. Kramer; Westlake Legal Group, PLLC, on brief), for
appellees Westlake Legal Group and Thomas K. Plofchan, Jr.

(James D. Griffith, on brief), *pro se* appellee.

RaLord Allah Tung ("Tung") appeals from an order of the Circuit Court of Fairfax

County ("circuit court") sustaining Westlake Legal Group, et al.'s ("Westlake") plea in bar as a

result of Tung's complaint being untimely filed based upon the applicable statute of limitations.

On appeal, Tung assigns error to the circuit court: 1) for failing to apply a five-year statute of

limitations; 2) for ruling that the limitation period began to run on February 15, 2018; 3) for

failing to adopt the tolling provision related to nonsuited complaints pursuant to Code

§ 8.01-229(E)(3); 4) for failing to apply the COVID-19 tolling orders issued by the Supreme

Court of Virginia; and 5) for finding that Tung had no contractual relationship individually with

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Thomas K. Plofchan, Jr. ("Plofchan") or James Daniel Griffith ("Griffith"). Finding no error, we affirm the circuit court's judgment.[1]

## I. BACKGROUND[2]

In 2014, Tung obtained a money judgment against Adam Needham ("Adam") and his mother, Fatima Needham ("Fatima"). Seeking to enforce his judgment, Tung, by counsel, filed a complaint to enforce the judgment against certain real property owned by Adam and Fatima. He also filed a lis pendens with regard to a portion of their real property.

Tung subsequently obtained alternative legal representation from Westlake. Plofchan and Griffith were designated by Westlake to serve as Tung's "Principle [sic] Attorney" and "Senior Associate." In January of 2015, Tung executed a contingent fee representation agreement ("agreement") with Westlake wherein Westlake agreed to "provide representation" and to "advise [Tung] at each stage of the proceedings regarding the options available to [Tung]." The agreement further specified that "[n]o claim may be brought by [Tung] for a breach of this contract more than two years after an alleged breach." However, neither Plofchan, Griffith, nor any other agent of Westlake executed the agreement. No other agreements—oral or otherwise—exist between Tung and Westlake, or Westlake's attorneys, individually.

In 2015, Plofchan and Griffith nonsuited Tung's original 2014 complaint to enforce his judgment against Adam and Fatima and subsequently filed a new complaint seeking to enforce that judgment. In response, Fatima filed counterclaims against Tung on a variety of issues. Throughout

---

[1] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

[2] When considering a ruling on a plea in bar, this Court "'view[s] the facts in the light most favorable to' . . . the prevailing party" below. *Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 59 (2014) (quoting *Chalifoux v. Radiology Assocs. of Richmond, Inc.*, 281 Va. 690, 696 (2011)).

the ensuing litigation, Plofchan and Griffith neither appeared in court on Tung's behalf nor responded to Fatima's discovery requests. As a result, Fatima filed a "Motion for Default Judgment and/or Summary Judgment," about which neither Plofchan nor Griffith notified Tung. In April of 2016, after Plofchan and Griffith failed to respond to Fatima's motion, the circuit court granted default judgment in favor of Fatima. The circuit court further ordered the lis pendens removed from their real property and dismissed Tung's claims with prejudice. According to Tung, neither Plofchan nor Griffith informed Tung of the existence of the circuit court order for two years.

On January 26, 2018, Plofchan spoke with Tung by phone. Plofchan advised Tung that he had fired Griffith and that the circuit court had previously entered default judgment against Tung.[3] Plofchan also informed Tung that they could "remedy the situation" by filing a motion to vacate the circuit court's judgment. Tung "verbally authorized Westlake . . . to proceed on [his] behalf" and draft a motion to vacate. Plofchan also informed Tung that he "had the right to obtain an independent attorney to take over this case." Tung subsequently obtained new counsel.

On January 29, 2018, Plofchan received an email from Tung's new counsel involving "claims that he may have against you, your firm and your firm's malpractice carrier arising from certain debt collection and property claims that were being handled by [Griffith]." Tung's new counsel also requested copies of Tung's records and files. After not receiving the requested files, Tung's new counsel emailed Plofchan again on February 2, stating that "Tung has asked [us] to represent him in his claims against [Adam] and, if necessary, against your firm arising from the evident and apparent mishandling of his matter by your firm." That same day, Westlake sent Tung an email acknowledging that Tung's new counsel had "indicated to [Westlake] that you wish them to take over the Tung v. Needham case" and noting that "[w]e cannot release your file until we have written confirmation from you that you want us to do so."

---

[3] Plofchan fired Griffith from Westlake on October 31, 2017.

On February 15, 2018, Westlake emailed Tung notifying him that Westlake had "prepared an independent action to vacate the judgment." But due to the preceding days' correspondence, Westlake further advised Tung that "[w]ithout your written acknowledgement (email should be fine), . . . [Westlake] will need to stop work" on the case. About 30 minutes later, Tung responded, "I have retained new counsels for my case and they have already contacted you. Please direct all communications to my new counsels. I do not give you permission to proceed on my case."

However, Tung contacted Westlake throughout February and March of 2018 concerning some doubts he had about his decision to obtain new counsel. Finally, after Tung requested that Westlake file the motion to vacate, Westlake sent Tung and his new counsel an email on March 15, 2018, saying that it did not believe that "[Westlake was] in a position to file on his behalf" and that "Tung has retained new counsel." Additionally, Westlake informed Tung's new counsel that it had "consulted with the Virginia State Bar ethics counsel" and that "it is a conflict to file on behalf of an adverse former client." Westlake also attached the motion they "were prepared to file" for Tung's new counsel's consideration. Based upon review of the email correspondence, neither Plofchan, Griffith, nor any attorney at Westlake performed any legal work for Tung between February 15 and March 15. The March 15 email was the final correspondence between Westlake, its attorneys, and Tung.

On February 23, 2021, Tung filed a complaint against Westlake, Plofchan, and Griffith, alleging breach of duty arising from their representation of him. Tung subsequently nonsuited the initial complaint on June 7, 2023. On December 4, 2023, Tung filed a second complaint alleging legal malpractice and for liability under a theory of respondeat superior against Westlake, Plofchan, and Griffith.

Plofchan—on behalf of himself and Westlake—and Griffith filed pleas in bar contending that a three-year statute of limitations should apply in the case and that the date the statute began to

run was, at the latest, February 15, 2018. In the alternative, they asserted that the two-year limitation period in the agreement for the filing of any legal malpractice claims should control and bar the suit. Tung responded that since a written, unsigned agreement existed between the parties, his claims benefited from the five-year statute of limitations in Code § 8.01-246(2). Tung claimed that Code § 8.01-246(4) had been amended in 2019 to specifically provide for claims arising from unsigned, written contracts, making them subject to a three-year statute of limitations. However, he argued that since that statutory change had not yet been adopted when Tung's claims accrued in 2018, the five-year statute of limitations applied instead.

On August 29, 2024, the circuit court held a hearing on the pleas in bar. Plofchan testified, "Prior to [February 15, 2018] . . . I had sent [Tung] a draft pleading, and that was what's referenced in [Westlake's] emails," indicating that he had completed the motion to vacate by February 15, 2018. Plofchan also testified that he and Westlake took "[n]o action . . . on behalf of . . . Tung" after February 15. Tung testified that he had been communicating with Westlake between February 15 and March 15, and he subjectively believed that "[t]hey were always [his] attorn[eys]." He also testified that his new attorneys were only hired to address potential malpractice actions, not his case against Adam and Fatima.

Following the evidentiary hearing, the circuit court sustained the pleas in bar, holding that the five-year statute of limitations in Code § 8.01-246(2) did not apply to Tung's claims because no one had executed the agreement on behalf of Westlake. The circuit court also found that the limitations period began accruing on February 15, 2018, because "none of the [attorneys] provided any further professional services related to the particular undertaking at issue" after that date.[4] Finally, the circuit court found Tung's assertions of ongoing legal work "to not be credible under

_____

[4] The circuit court did not find that the accrual date differed between Griffith and the other appellees.

the circumstances." The circuit court reasoned that since Tung filed his initial complaint on February 23, 2021, his complaint was time-barred regardless of whether a three- or two-year statute of limitations applied and, therefore, declined to rule on which limitation period applied in this matter. Tung did not object to the applicability of Code § 8.01-229(E)(3)'s tolling provision concerning nonsuited cases or whether there was a contractual relationship between him and either Plofchan or Griffith. Tung also did not raise the effect on tolling as a result of the Supreme Court of Virginia's COVID-19 tolling order at any point during the proceedings.

The circuit court entered a final order sustaining the pleas in bar on October 9, 2024. Tung appended written objections only regarding the circuit court's rulings on the applicability of the five-year statute of limitations and the date of accrual. Tung appealed.

## II. ANALYSIS

### A. *Standard of Review*

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). "The movant bears the burden of proof on such a plea, and if evidence is presented ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Id.* (quoting *Massenburg*, 298 Va. at 216). But "[w]hen the plea in bar depends on pure legal questions, including questions of statutory construction, we review the circuit court's holding de novo." *Id.*

### B. *The five-year statute of limitations does not apply to Tung's claims.*

Tung asserts that the five-year statute of limitations applies to his claims rather than a shorter duration. We disagree.

Tung's contention hinges on the evolution of Code § 8.01-246. In 2018, "actions on any contract . . . which is in writing and signed by the party to be charged" have a five-year statute of limitations unless the contract specifies a different duration. Code § 8.01-246(2) (2015). Meanwhile, in 2018, Code § 8.01-246(4) provided that "actions upon unwritten contracts, express or implied" have a three-year statute of limitations. Code § 8.01-246(4) (2015). No express provision was adopted regarding which limitation period applied for causes of action involving unsigned, written contracts.

In 2019, the General Assembly further amended Code § 8.01-246(4) by providing that "actions upon . . . any contract . . . that is in writing and not signed by the party to be charged" are subject to a three-year statute of limitations. 2019 Va. Acts ch. 241. Correspondingly, Code § 8.01-246(2) remained substantively unchanged.[5]

Tung asserts on appeal that "[g]iven the 2019 changes to the language of [Code] § 8.01-246(4) . . . , it is presumed that [in 2018] a valid written contract, signed or unsigned, was subject to the five-year statute of limitations." We disagree.

When interpreting a statute, "the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, or strained construction." *Smith v. Commonwealth*, 66 Va. App. 382, 388 (2016) (quoting *Williams v. Commonwealth*, 57 Va. App. 341, 351 (2010)). And we recognize that "[s]tatutory amendments are presumed to *amend* statutes." *Appalachian Power Co. v. State Corp. Comm'n*, 301 Va. 257, 281 (2022). But those changes only implicate the provisions that were *actually altered*. *See Harrison v. Wissler*, 98 Va. 597, 600 (1900) (observing that "[t]he rule of construction, when there has been a [statutory]

_____

[5] The only alterations to this provision included replacing every occurrence of "which" with "that." *See* 2019 Va. Acts ch. 241.

revision, is that the old law was not intended to be altered, unless such intention plainly appears in the new Code" provision).

Here, the requirements for applying a five-year statute of limitations remained substantively identical after the 2019 amendments. Hence, the 2019 amendment does not affect the interpretation of the 2018 version of Code § 8.01-246(2). Thus, without a contractual term specifying otherwise, a five-year statute of limitations under the 2018 statute is only triggered when a contract is "in writing *and* signed by the party to be charged." Code § 8.01-246(2) (2015) (emphasis added). While the agreement here was in writing, it was not signed by Plofchan, Griffith, or any agent on behalf of Westlake. Therefore, the five-year statute of limitations does not apply.

C. *The statute of limitations began accruing on February 15, 2018, which renders Tung's claims time-barred.*

Tung alternatively asserts that even if a three-year statute of limitations applied, the accrual date for purposes of calculating the limitation period was March 15, 2018, rather than February 15, 2018, because Westlake, Plofchan, and Griffith continued to represent him in his case against Adam and Fatima. We disagree.

Virginia follows the continuing-representation rule, which states that, in malpractice actions, "the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated." *Keller v. Denny*, 232 Va. 512, 518 (1987). "The proper inquiry is not whether a general attorney-client relationship has ended, but instead, when the attorney's work on the particular undertaking at issue has ceased." *Moonlight Enters., LLC v. Mroz*, 293 Va. 224, 233 (2017) (quoting *Shipman v. Kruck*, 267 Va. 495, 505 (2004)). An "attorney's work on a particular undertaking" is their "*actual* work on [that] particular undertaking, not [their] imputed work." *Id.* (emphasis added).

Here, the circuit court did not err in finding that the statute of limitations began accruing on February 15, 2018. While we do not know what specific day Plofchan or another attorney at Westlake completed the motion to vacate, the record reflects that the motion was completed by at least February 15. The record shows that Westlake informed Tung on February 15 that it had "*prepared* an independent action to vacate the judgment." (Emphasis added). Additionally, when Westlake emailed Tung on March 15, Westlake attached the motion to vacate and described it as the motion Westlake and Plofchan "*were* prepared to file." (Emphasis added). The use of past tense indicates that the motion was finished at least by February 15, 2018, even if we cannot discern precisely when it was completed. And while Westlake used the future tense in its February 15 email indicating that, without Tung's consent, "[Westlake] *will* need to stop work," Tung immediately responded, "I do not give you permission to proceed on my case." (Emphasis added). This signaled Westlake to cease all professional services on Tung's case, thus rendering Tung an "adverse *former* client." (Emphasis added). Finally, in addition to the email correspondence, Plofchan testified that neither he, nor anyone at Westlake, performed any legal work on Tung's case after February 15.[6]

Thus, even with the uncertainty as to when the motion to vacate was completed, the evidence in the record supports the circuit court's finding that February 15, 2018, was the date of accrual. Because Tung did not file the original complaint in this matter until February 23,

---

[6] Tung contends that his phone calls with Westlake between February 15 and March 15, plus Westlake's March 15 email attaching the motion to vacate for Tung's new counsel, means that Plofchan or Westlake did legal work on his case after February 15. But the circuit court found this "to not be credible under the circumstances," and we do not conclude otherwise. *See Richardson v. Richardson*, 242 Va. 242, 246 (1991).

2021—more than three years from February 15, 2018—his claims were time-barred regardless of whether a three- or two-year statute of limitations applied.[7]

### III. CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*

---

[7] We do not decide whether the agreement's two-year limitation on malpractice claims applies as opposed to the three-year statute of limitations in Code § 8.01-246(4). Finding that Tung's claims would violate the three-year duration—after concluding the five-year statute of limitations does not apply—is sufficient for resolving this appeal. *See Taylor v. Commonwealth*, 78 Va. App. 147, 157 (2023) (holding that the "doctrine of judicial restraint dictates that we decide cases on the . . . narrowest grounds available").

Finally, Tung waived his remaining assignments of error pertaining to the tolling provision under Code § 8.01-229(E)(3) for nonsuited actions, the Supreme Court of Virginia's COVID-19 tolling orders, and potential contractual undertakings between Tung and Plofchan or Griffith. Tung either failed to contemporaneously object to the circuit court's rulings on these grounds or failed to raise them altogether, which means they are waived. *See* Rule 5A:18. And because Tung did not raise the preservation exceptions in his opening brief, "we will not sua sponte raise them on his behalf." *Hammer v. Commonwealth*, 74 Va. App. 225, 237 (2022) (quoting *Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017)).