PRESENT: All the Justices

INGLESIDE EMERGENCY GROUP, LLC,
ET AL.,

v. Record No. 241064

MICHELE H. HOLLIS, M.D.

OPINION BY
JUSTICE TERESA M. CHAFIN
DECEMBER 18, 2025

FROM THE COURT OF APPEALS OF VIRGINIA

In this interlocutory appeal, appellants Ingleside Emergency Group, LLC, ("IEG") and

Kingsford Emergency Group, LLC, ("KEG") (collectively, "appellants") contend that the Court

of Appeals erred in affirming the denial of their plea in bar to Dr. Michele Hollis's claim under

the Virginia Whistleblower Protection Act (the "VWPA"), Code § 40.1-27.3.  Appellants

maintain that the allegations of the complaint establish that Hollis's VWPA claim was time

barred where she alleged a prohibited retaliatory action that took place more than one year prior

to filing suit.  For the following reasons, we reverse the judgment of the Court of Appeals and

remand this case to the circuit court for further proceedings.

I.  BACKGROUND[1]

Appellants are medical staffing companies that contract with physicians who provide

clinical services to certain hospitals.  In November 2018, Hollis entered into contracts with

appellants to provide emergency medicine services at HCA Healthcare Company ("HCA")

facilities.  After a series of renewals, Hollis signed new contracts (the "provider agreements")

---

[1] Consistent with the standard of review guiding this Court's consideration of a decision on a plea in bar, where no evidence was taken on the plea, this Court considers solely the pleadings, and the facts as alleged in the complaint are deemed true.  *See Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019).

that were effective for one year from July 6, 2020, and could be terminated without cause upon 90 days of written notice, or without notice by the staffing company for certain causes.

In November and December of 2020, Hollis voiced her opposition to practices she was directed to undertake as part of her services. Pertinently, Hollis reported to management that she refused to upcharge her services and that she believed the practice was fraudulent. At the same time, Hollis complained to management verbally and by email that appellants had intentionally mismanaged federal COVID-19 relief funds by failing to distribute any funds to the physicians. In later communications, after Hollis was informed in January 2021 that her contracts would not be renewed unless she agreed to a significant rate cut, Hollis remarked that failing to disburse relief funds to physicians while simultaneously "cutting the reimbursement of those very same workers presents a very bad visual for the general public."

On March 2, 2021, Hollis "noticed that she was not scheduled to work in April." Hollis contacted Jason Clark, the Vice President of Staffing Operations for HCA, to "ask why." Clark responded that "there is a case pending review," and directed Hollis to contact Dr. Ankur Fadia, who did not return Hollis's calls or provide additional information. On June 2, 2021, Hollis received a letter from HCA stating that her "resignation" was "approved," and that her "appointment and clinical privileges have been considered voluntarily relinquished *effective 3/3/2021*." (Emphasis added.)

On April 1, 2022, Hollis filed suit in the Henrico County Circuit Court. Relevant to this appeal, Hollis alleged a violation of the VWPA "against all defendants" for "terminating" the provider agreements.[2] Her complaint alleged that the "decision to terminate Hollis" was made

_____

[2] Hollis's complaint named several defendants: IEG; KEG; Subsidium Healthcare, LLC; and SCP Health, d/b/a "Schumacher Clinical Partners," d/b/a "Schumacher Group Healthcare

2

"in breach of her [provider agreements] and in retaliation for her refusal to engage in fraudulent billing and for reporting the misuse/misappropriation of other federal funds." Without any written notice to Hollis, appellants "simply stopped scheduling Hollis for work at [the hospital] starting April 2021."

Appellants demurred to Hollis's complaint, arguing that Hollis failed to allege sufficient facts to state a claim under the VWPA. Appellants argued that Hollis failed to allege retaliatory acts taken by appellants that were causally connected to protected activity. In opposing the demurrer, Hollis reiterated the temporal proximity of her engagement in protected activity to when she "noticed that she had been removed from the schedule," and "[t]hus began the retaliatory adverse action." The circuit court overruled the demurrer, but appellants seized on Hollis's characterization of her allegations and filed a plea in bar.

Appellants asserted that the VWPA claim was time barred because Hollis's complaint alleged that she "suffered retaliation on March 2, 2021, when on that date she 'noticed that she was not scheduled to work in April [2021.]'" Appellants repeated Hollis's explanation that the March removal from the schedule "began the retaliatory adverse action." Appellants emphasized Hollis's early recognition that she had not been scheduled to work and that the removal was to her detriment, asserting that a cause of action for retaliation accrues when the plaintiff learns of the adverse employment action, not when she might experience the full consequences. Appellants argued that Hollis's own actions and statements confirmed that she suffered her redressable injury in March when she took steps to learn why she was not placed on the schedule as required by the provider agreements.

---

Consulting, Inc." Hollis alleged that all defendants "operate as a singular entity," but the plea in bar was filed by appellants only.

Hollis opposed the plea in bar, arguing that the "ultimate act" giving rise to the cause of action occurred within the limitations period. She argued that a cause of action accrues in Virginia upon completion of the last act that completes all elements of the claim. The relevant "harm" contemplated by the VWPA, she argued, was "'discharge' and an action that 'affects the terms and conditions of employment," which were "[c]ollectively . . . an 'adverse action.'" Hollis contended that no legal harm had occurred in March 2021 because appellants had approximately one month to change their minds and place her on the schedule going forward. Hollis argued that she did not suffer material harm until April when she still was not on the schedule, at which time the limitations period began to run. Hollis reiterated that the "ultimate act that completed the cause of action in this matter was not placing [her] on the schedule in April of 2021, causing her to go without pay and essentially terminating her employment."

Following oral argument, the circuit court denied the plea in bar. At appellants' request, and pursuant to Code § 8.01-675.5, the circuit court certified an interlocutory appeal of its order denying the plea in bar to the VWPA claim.

The Court of Appeals granted review and affirmed the circuit court's judgment. It distinguished the present case from its earlier decision in *Rivera v. Mantech Int'l Corp.*, 81 Va. App. 170 (2024), in which it held that an employee's cause of action under the VWPA accrued on the date his employer notified him that his employment was being terminated, not the later date when the termination took effect. The Court of Appeals determined that Hollis was "never explicitly notified by her employer that it was taking a definitive, adverse employment action against her that was certain to take effect in the future." *Ingleside Emergency Group, et al. v. Hollis*, 2024 Va. App. LEXIS 654, at *9 (Nov. 12, 2024) (unpublished). Despite Hollis's attempts to communicate about the status of her employment, appellants "did not engage in any

4

meaningful communication with her." *Id.* As such, neither her realization in March that she was not scheduled to work nor the limited communication she received in response to her inquiry could constitute an adverse employment action akin to the notice of termination considered in *Rivera*.

This Court granted appellants' appeal.

## II. ANALYSIS

Appellants contend that Hollis's allegation that she noticed on March 2 that she had been removed from the work schedule was a prohibited retaliatory action sufficient to trigger the running of the statute of limitations. We agree.

### A. THE STANDARD OF REVIEW

"[A] plea in bar presents a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Station #2, LLC v. Lynch*, 280 Va. 166, 175 (2010) (quoting *Hilton v. Martin*, 275 Va. 176, 179-80 (2008)). "The moving party has the burden of proof on that issue." *Id.* "[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). "In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Id.* "Absent a genuine issue of material fact, a circuit court's 'denial of a plea in bar as to the statute of limitations is a question of law that this Court reviews de novo.'" *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146, 154 (2018) (quoting *Thorsen v. Richmond SPCA*, 292 Va. 257, 277 (2016)).

B.  THE PROHIBITED RETALIATORY ACTION UNDER THE VWPA

The VWPA prohibits employers from taking retaliatory action against employees for engaging in certain protected activities.  In pertinent part, the VWPA provides that

> [a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee [takes actions specified in (A)(1) through (A)(5).]

Code § 40.1-27.3(A).  An employee who alleges they have been retaliated against "may bring a civil action in a court of competent jurisdiction within one year of the employer's prohibited retaliatory action."  Code § 40.1-27.3(C).

The rules governing commencement of limitation periods in Virginia are well-settled.  "As a general rule, where an injury, though slight, is sustained in consequence of the wrongful or negligent act of another and the law affords a remedy therefor the statute of limitations attaches at once."  *Kiser v. A.W. Chesterton Co.*, 285 Va. 12, 22 (2013) (quoting *Street v. Consumers Mining Corp.*, 185 Va. 561, 566 (1946)).  "Without some injury or damage . . . a cause of action cannot accrue."  *Shipman v. Kruck*, 267 Va. 495, 502 (2004) (quoting *Keller v. Denny*, 232 Va. 512, 352 (1987)) (collecting cases).

Once even slight injury exists, "it is immaterial that all the damages resulting from the injury do not occur at the time of the injury," as the "running of the limitation period will not be tolled by the fact that actual or substantial damages did not occur until a later date."  *Van Dam v. Gay*, 280 Va. 457, 463 (2010).  Ultimately, the "*act itself* is regarded as the ground of the action

6

and is not legally severable from its consequence." *Kiser*, 285 Va. at 22 (emphasis added). "The statute then begins to run, and not from the time of the damage or discovery of the injury."[3] *Id.*

In the context of workplace retaliation, it may not be immediately apparent at the time of injury that an employment action is adverse or retaliatory. However, "[d]ifficulty in ascertaining the existence of a cause of action is . . . irrelevant" to when a statute of limitations begins to run. *Van Dam*, 280 Va. at 463. A statute of limitations might commence when the "injury or damage is unknown or difficult or even incapable of discovery," but it has long been the case in Virginia that the slightest injury marks the accrual of the cause of action, and so too the commencement of the limitation period. *Id.* It is the "role of the General Assembly, not the judiciary, to change a rule of law that has been relied upon by bench and bar for so long." *Shipman*, 267 Va. at 503.

As argued by appellants, the Court of Appeals' application of these rules is at odds with the statute and the facts of the case. When statutory language is clear and unambiguous, this Court applies the plain meaning of the terms as used. *See HCA Health Servs. of Va., Inc. v. Levin*, 260 Va. 215, 220 (2000). The VWPA identifies several specific prohibited retaliatory actions that can each trigger the statute of limitations, but it also includes the broader category of "other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment." Code § 40.1-27.3(A). By its own terms, the VWPA identifies the "prohibited retaliatory action" as the injury that triggers the one-year statute of limitations. Code § 40.1-27.3(C). Therefore, the retaliatory action itself, and not the consequential damages or subsequent discovery of their nature, constitutes the accrual of the cause of action. *See*

---

[3] Absent a statutory exception, "Virginia has generally rejected the so-called diligence and discovery rule, which would make the time to sue contingent upon fixing the date by which a plaintiff knows or should know of the existence of a cause of action giving a right to sue." Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 4.10, at 482 (7th ed. 2020).

*Rivera*, 81 Va. App. at 178 ("The plain language of the [VWPA] states that the limitations period begins to run as of the date of the employer's 'prohibited retaliatory action,' not from the date that the employee felt the full impact of the action.").

In its review, the Court of Appeals rested its decision primarily on the lack of notice that the removal was a definitive, adverse employment action against Hollis, distinguishing the facts here from those in *Rivera*. In that case, after participating in a federal investigation of his employer, Rivera was informed in writing by his employer on January 14, 2022, that his employment was being terminated as part of a contract reduction, and that his last day of employment would be February 7, 2022. *Rivera*, 81 Va. App. at 173. Rivera filed his whistleblower suit on February 7, 2023. *Id.* at 174. Responding to his employer's plea in bar, Rivera argued his claim was timely because the effective date of his termination was February 7, so that date was when his claim accrued. *Id.*

The Court of Appeals disagreed with Rivera, declining to "rely on precedents involving federal statutes that bear only a passing resemblance" to the VWPA. *Id.* at 178. Instead, the Court of Appeals relied on the plain language of the VWPA to find that the "allegedly prohibited retaliatory action was [the employer's] decision to eliminate Rivera's position," which was "clearly communicated" to Rivera in the January 14 letter. *Id.* The employer's act of notifying Rivera that he was losing his employment was the "prohibited retaliatory action" contemplated by the statute that triggered the limitations period. *Id.* (quoting Code § 40.1-27.3(C)). Thus, the notice was significant in *Rivera* because it constituted the "act itself" that was the ground for the action. *See Kiser*, 285 Va. at 22.

Here, the Court of Appeals implied, and Hollis argues, that the lack of communication gave Hollis no subjective basis to believe that the action taken was adverse to her employment.

8

However, for purposes of accrual, the "act itself is . . . the ground for the action," not the "time of the damage or discovery." *Id.* For a cause of action to accrue and the limitation period to commence under the VWPA, all the statute requires is the occurrence of a prohibited retaliatory action.

As is evident from the complaint, a prohibited retaliatory action occurred on March 2, 2021, when Hollis was not placed on the work schedule as required by the provider agreements. This was a deliberate act that affected the terms of Hollis's employment. The fact of removal had been communicated to Hollis clearly enough that she proactively pursued an explanation that same day for why she was not scheduled. After first receiving an unsatisfactory explanation, Hollis attempted to follow up as directed, despite being met with unresponsiveness.

Arguing that the removal could have been understood as a "separate, less severe retaliatory event," Hollis asserts that she had no communication as to the purpose, intent, or permanence of the removal. Absent such communication, there could be many reasons for removing an employee from the work schedule that are neither retaliatory nor nefarious, particularly when an employer can, and does, take corrective action.

Cognizance of a particular intent, however, is not a part of the statute. To that end, it was unnecessary to provide Hollis any more notice of adversity than that apparent in the act of removing her from the work schedule, because she was cognizant enough of the "slight" injury to her employment that she obtained counsel shortly thereafter and sought to protect her interests. *See Kiser*, 285 Va. at 22. It was immaterial, then, that she had not felt "all the damages resulting from the injury" when she was first removed from the schedule. *See Van Dam*, 280 Va. at 463. Further, at no point was any corrective or remedial action taken that could have led Hollis to believe the removal was neither retaliatory nor adverse. To the contrary, she

9

was unequivocally given reason to believe otherwise when she was explicitly informed on June 2, 2021, that her employment was considered terminated as of March 3, 2021.

Even if Hollis did not fully understand the extent of the adverse nature of her removal in March of 2021, its character therefore became clear to her in June of that same year, well within the one-year statute of limitations, and she had sufficient time to pursue the right of action granted to her by the VWPA. As pled in the complaint, and as acknowledged on brief, when Hollis received the June 2, 2021, termination letter that confirmed the effective end to her employment was March 3, 2021, "Hollis understood that [a]ppellants had decided to terminate her employment in March 2021." This understanding additionally undermines her argument on appeal that she alleged two discrete acts of retaliation—the removal from the schedule and the termination—where the removal was alleged merely as historical fact. Had the termination occurred and been pled as an independent action distinct from the removal, her position might have been different. That is simply not the case. Hollis's complaint makes clear that the June 2021 termination letter only confirmed that the true nature of the earlier act to remove Hollis from the schedule going forward was to effectively terminate her employment.

Hollis, therefore, sustained her initial injury from the prohibited retaliatory act of removing her from the work schedule in March of 2021. That she later discovered her injury to be greater than she first realized is immaterial to when she first sustained the injury. Thus, as pled, her cause of action for her termination accrued and the statute of limitations commenced at the time of the removal in March of 2021. Consequently, Hollis's claim under the VWPA as alleged in the complaint she filed on April 1, 2022, is time barred, and the denial of appellants' plea in bar was in error.

## III.  CONCLUSION

For the reasons stated, we reverse the judgment of the Court of Appeals and remand this case for further proceedings.

*Reversed and remanded.*